## MILLER vs. WOODWARD AND THORNTON, ADMINISTRATORS.

*In Chancery.*—The bill set forth, that in 1836, complainant and others became the securities of one M. in his official bond, as collector of the revenue; that M. died in 1837, insolvent, and that defendants administered on his estate, and have still in their hands the greater part of the assets; that, in 1841, complainant was sued on said bond, and that the State recovered judgment against him, as such security, for two hundred and sixty-four dollars, all of which he was compelled to pay, as his co-securities were insolvent; that said suit was not commenced until after the lapse of three years from the date of the letters of administration, &c.

The bill prayed for an injunction restraining the administrators from making distribution, and that they be decreed to pay over to complainant the amount paid by him to the State. *Held:*

1. That, under the 15th section of the act of March 7th, 1835, concerning courts, (R. S. 1835, p. 156,) the County Court has exclusive original jurisdiction over all the matters detailed in the first six clauses of that section, concurrent jurisdiction with the Circuit Court in the cases enumerated in the seventh clause, and exclusive original jurisdiction or power to perform the various acts specified in the last five clauses. The decision of this Court, in Erwin vs. Henry, (5 Mo. Rep., p. 469,) that the exclusive original jurisdiction of the County Court extended only to the cases enumerated in the first clause of said section, and that courts of chancery and the county courts had concurrent jurisdiction in the cases enumerated in the remaining clauses of said section, is therefore overruled.

2. That the general control over executors and administrators, given to the circuit courts by the sixth clause of the eighth article of said act concerning courts, is limited in its application to such cases as are not specifically provided for in other parts of the same act, and the act concerning administration.

3. That the right of a security to recover from his principal the amount which he has paid in his behalf, is a right which may be established in a court of law; but his right to stand in the place of the creditor as to all securities, funds, liens, and equities which he may have for the same debt, is a right which can only be established in a court of equity.`

4. That courts of equity have jurisdiction in this and similar cases, in which sureties wish to avail themselves of every advantage which the creditor had against their principal. The amount involved places this case within the concurrent jurisdiction of the county and circuit courts, and the demand being purely equitable, it falls to the Chancery side of the Circuit Court.

5. That, as the complainant's cause of action did not accrue until the lapse of three years after the granting of letters of administration to defendants, he was not barred by the limitation of three years, in the administration act.

## ERROR to Ray Circuit Court.

P. L. EDWARDS, *for Plaintiff in Error.*

1. Whenever a security pays the debt of his principal, equity will subrogate the former to all the rights and remedies of the creditor against the latter.— Wendall vs. Van Rensselaer, 1 Johns. C. Rep., 343; Wiser vs. Blakely and Others, *Ibid.,* 437; Brown vs. Rickets, 3 Johns. C. Rep., 553; Hays vs. Ward, 4 Johns. C. Rep., 123; Finsley vs. Oliver, 5 Munf., 419.

2. After funeral expenses and expenses of last sickness of decedents, the State is a preferred creditor, (Rev. Stat., p. 55, sec. 1,) and a security having paid a

debt due from the deceased to the State is entitled to be subrogated to all the benefits of her priority; for the same right of priority which belongs to the Government attaches to the claim or individual who, as surety, has paid money to the Government.—Hunter *vs.* The United States, 5 Peters' Rep., 172; Hickman *vs.* Hall's Administrators, 5 Littell, 338.

3. The only question presented by the record is, whether the State, had she proceeded against the administrators, would have been entitled to priority over other creditors except those of the first and second classes. If so, it follows that all other creditors will be postponed to the surety who has paid the debt at her suit.—Parks and Others *vs.* The State, 7 Mo. Rep., 194; see Wheeler's American Chan, Dig., title, "Prin. and Surety," p. 486, vol. 2.

4. The complainant was entitled to a decree, for assets might yet come to hands of the administrators: surely he cannot be prevented from establishing his claim.

DUNN, *for Defendants in Error.*

1. A court of equity has, in general, no jurisdiction where a plain, adequate and complete remedy exists at law.—Mitf. Chan. Plead., 26, note; Rev. Stat., 155, sec. 8.

2. The complainant should have presented his demand for allowance to the County Court.—Rev. Stat. 55, art. 4.

3. The priority given to the State in the administration of the assets of the estate is a plain legal right.—Rev. Stat., 55, sec. 1.

4. The State must have enforced that right at law, and if the complainant, upon the payment of the money, occupies the same ground, his remedy is at law.

5. The creditors whose demands have been allowed by the County Court have a vested legal interest in the estate, which it would be inequitable to take from them.

6. The complainant having failed to exhibit his claim for allowance within three years, his remedy at law is barred by the statute of limitations.—Rev. Stat., 55, section 2.

7. And although the statutes of limitations are, in their terms, applicable to courts of law only, yet equity acts by analogy to the rules of law, and this court will refuse relief.—1 Story's Equity, 73, sec. 55; 3 Marsh. Rep., 223.

8. It will not take a case out of the statute that the cause of action did not come to the knowledge of the party until the limitation had expired.—5 Mo. Rep., 454.

9. It was the duty of the complainant to have looked after his principal, and if he was apprehensive of loss, to have sought relief from future liability.—Rev. Code, 575; 7 Mo. Rep., 196.

10. As soon as the collector made default, the complainant, his security, could have compelled the State to collect the debt from the principal.—1 Story's Equity, 322, sec. 327.

11. If the complainant is entitled to the priority which the State held, still the maxim, *Nullum tempus occurrit reipublicæ,* is applicable to the State only.—Ballantine on Limitations, 18; 4 Bibb's Rep., 62; 9 Wheat. Rep., 737.

NAPTON, *Judge, delivered the opinion of the Court.*

This was a bill in chancery, filed by the plaintiff in error against Woodward & Thornton, administrators of the estate of William W. Mauzey, deceased, and John S. Wilkerson, James S. Ball, and others, creditors of said estate. The bill alleges, that in the year 1836, the complainant, in connection with three others, became securities in a collector's bond for William W. Mauzey, in the penal sum of ten thousand dollars, conditioned for the faithful performance of his duties in that office; that, in 1837, Mauzey died intestate, and defendants, Woodward & Thornton, administered upon his estate; that the greater portion of the assets were yet in the hands of said administrators, and no final settlement had been made; that the estate is insolvent, and will not pay fifty cents in the dollar on the demands against it; that the County Court of Ray county had ordered distribution of such moneys as were in the hands of said administrators to be made among the creditors, paying on all debts in class No. 5, thirty seven and a half cents in the dollar.

The bill further charges, that in April, 1841, suit was instituted by the State of Missouri against the complainant and other securities of Mauzey, on said collector's bond, and judgment obtained for two hundred and sixty-four dollars, which suit was not commenced until more than three years had elapsed from the date of the letters of administration.

The bill charges, that complainant paid the whole amount of this judgment, and that his co-securities are insolvent.

The bill prays for an injunction restraining the administrators from making distribution, and that they be decreed to pay over to complainant the amount paid by him to the State.

To this bill defendants demurred generally: the demurrer was sustained by the Circuit Court.

How far courts of chancery in this State have original jurisdiction in matters relating to the administration of estates, is a question which the various and apparently conflicting provisions of our statutes have very much embarrassed.

The subject was very much investigated by this Court in the case of Erwin *vs.* Henry, (5 Mo. Rep.,) and a majority of the court in that case, in construing the 15th section of the act to establish courts of record, and prescribe their power and duties, determined, that the words, "exclusive original jurisdiction," should not be extended beyond the first clause of that section, and consequently inferred that courts of chancery and the county courts had concurrent jurisdiction in the cases enumerated in the remaining clauses of the section. This appears to have been a hasty and unwarranted reading of the section.

That section embodies in its twelve clauses the various powers and duties of the County Court; it declares that this court shall have exclusive original jurisdiction over all the matters detailed in the first six clauses, concurrent jurisdiction with the Circuit Court in the cases enumerated in the seventh clause, and exclusive original jurisdiction, or, (to use more appropriate phraseology,) power to perform the various acts specified in the five last clauses. This is plain, by a proper grammatical construction of the section, which requires the words, "exclusive

original jurisdiction," to be understood in all the clauses except the seventh, (where the words, "concurrent jurisdiction," are used,) and is made plainer by reference to the act in the Revised Code of 1825, *in pari materia*. The provision, as it stands in the Revised Code of '35, is substantially a copy of the former law: with a view to brevity and perspicuity, it is merely divided into clauses, and its phraseology slightly altered.

The section, as it is found in the Revised Code of 1825, is thus: "The several courts of probate shall have exclusive original jurisdiction in all cases relative to the probate of last wills and testaments, the granting letters testamentary and of administration, and repealing the same, appointing or displacing guardians of orphans, minors, and persons of unsound mind, in binding out apprentices, in the settlement and allowance of accounts of executors, administrators, and guardians; to hear and determine all disputes and controversies whatsoever in relation to wills, the right of executorship, administration or guardianship, or respecting the duties or accounts of executors, administrators or guardians, and *disputes and controversies between masters and their apprentices*; to hear and determine all suits and other proceedings instituted against executors and administrators, upon any demand against the estate of their testator or intestate, when such demand shall not exceed two hundred dollars, and concurrent jurisdiction with the Circuit Court, where the demand shall exceed that sum, subject to appeal in all cases, &c. They shall have power to amend process, and cause to come before them," &c.— proceeding to enumerate the matters specified in the eighth and subsequent clauses of the 15th section of the act of 1835. It will be seen, that there is no essential difference between the two sections, except as to the amount necessary to give jurisdiction to the Circuit Court, and the verbal alterations appear *to have been solely with a view to classify and to strip the act of verbiage. A comparison of the two acts places, we think, beyond all reasonable doubt, the inference, that the Legislature, in adopting the phraseology of the act of 1835, had no intention of substantially altering the distribution of the subjects of jurisdiction appertaining to the County Court, and that, consequently, that court was invested with exclusive original jurisdiction in all the cases enumerated in that section, except the seventh.

So far, then, as the fifteenth section of this statute is concerned, there appears to be no difficulty in establishing the nature and extent of the jurisdiction of the County Court. But the sixth clause of the eighth section of the same act gives to the Circuit Court "a general control over executors, administrators, guardians, minors, idiots, lunatics and persons of unsound mind," and they are directed "to proceed therein according to the rules, usages and practice of courts of equity." This is a very indefinite grant of power, or definition of jurisdiction, and it must be confessed, that to fix upon it a proper and reasonable construction, is not without its difficulties. If the section were alone on the statute book, and disconnected from the fifteenth section heretofore alluded to, its meaning would be obvious. The "*rules, usages, and practice*" of the English chancery courts, in their exercise of control over executors and administrators, are as well defined and established as any other branch of equity and common law jurisprudence. This head of equity, as may be seen by reference to English and American authorities, comprehends

almost the entire field of jurisdiction occupied by our administration act, and by that act apportioned to the County Court. Legatees could establish their legacies; creditors could compel a settlement and account of the assets; and the administrator himself would go into a court of equity, and institute a suit against the creditors generally, for the purpose of having their claims adjusted, and a final decree, settling the order and payment of the assets. Courts of equity, in England and in those States where the equity jurisprudence of England has been adopted, have, at the instance of a legatee or curator, taken the entire settlement of the estate from the ecclesiastical or probate courts; and in point of practice, where the estate is large and anywise involved, it is usually settled by a master in chancery, to the entire exclusion of the probate court. To adopt, therefore, the usages and practice of the English courts of chancery, *in extremo*, would be to render our chancery courts and county courts *concurrent* tribunals, in all matters relating to the settlement of estates.

The history of the origin and growth of this jurisdiction in England is sufficient, apart from the positive enactments of the statute, to show, that the reasons which called it into existence do not require its exercise here. Judge Story, in his treatise on this branch of equity, (Story on Equity, 505,) disavows the idea, that the sole ground of this extensive jurisdiction results from the duty of that court, to enforce the execution of trusts; for if this were the true ground, it would follow, that instead of concurrent, it would have exclusive jurisdiction. The true ground assumed and acted on in England was, that in all the cases in which they would take cognizance, the remedy at law either did not exist at all, or was not " plain, adequate, and complete."

From the examination of the reasons by which Judge Story, in his treatise on this subject, justifies the gradual attainment of this extensive jurisdiction by the chancery courts in England, and in those of the United States where the English system has prevailed, it will be seen, that all this power in the chancery courts grew out of the same jurisdiction of the ecclesiastical courts. Those courts, in the first place, had no means of enforcing a discovery of assets, and no power to marshal the assets on equitable principles, and, indeed, no way of reaching what in England were termed equitable assets. The second chapter of our administration act makes ample provision on this subject. The administrator or executor must make inventories of all the decedent's property, under oath, and if a suspicion arises, that any one has concealed or embezzled any of it, the individual charged with such concealment or embezzlement may be cited before the County Court, and compelled to answer.—See the act, ch. 2, sec. 9, 10, 11.

I do not undertake to say, that all the distinctions between legal and equitable assets are destroyed by our act, but it is certain, that the whole doctrine of marshalling assets has no application here, in cases of intestacy ; and even in case of a will, it is not easy to conjecture an instance in which a court of equity would, on that ground solely, have a right to interfere.

No power of giving preferences is reserved to the administrator: under the direction of the County Court, the assets are distributed to the creditors *pari passu;* and the precise order for the payment of debts, legacies, &c., is pointed

out in the statute, and is not founded on any supposed dignity of debts which existed at common law. What occasion can there be for marshalling assets here, when bond creditors and simple contract creditors are all on a footing, except so far as superior diligence creates a preference?— 2 Fonbl. Eq., b. 4, ch. 3; 1 Story Eq., 510.

In the next place, the ordinary courts could not compel the executor or administrator to prove the items of his account, or swear to its correctness. This is amply provided for in our administration act. Before the act of descents and distributions, it was also doubtful whether an administrator could be compelled to make any distribution of an intestate's estate. Where payment of a legacy was pleaded, the ecclesiastical courts required two witnesses; executors were entitled to the residue; and legatees could not be compelled to give refunding bonds : so that, Judge Story says, "practically speaking, in cases of any complication or difficulty, the court of chancery has acquired almost an exclusive jurisdiction."— Story's Eq., p. —.

In relation to legacies, the English courts of chancery have acquired, in many instances, an exclusive jurisdiction. This was assumed on the ground, that the executor was a trustee for the benefit of legatees, and, therefore, as a matter of trust, legacies were within the cognizance of that court. It was also claimed as incident to discovery and account, and lastly, because of the want of any adequate and complete remedy elsewhere. Upon this last ground, courts of chancery, in cases of legacies to married women and infants, and bequests involving the execution of a trust, have claimed and exercised exclusive jurisdiction, by enjoining the ecclesiastical courts from proceeding at all, and settling the whole matter in chancery.

It is thus seen, that the principal reason given by the equity courts of England for their assumption of such extensive jurisdiction, both concurrent and exclusive, over executors and administrators, and the settlement of estates, has been for the want of an efficient and adequate remedy at law. These defects, it is also seen, in the power of the English ecclesiastical courts, do not, to any extent, exist in the organization or powers of our courts of probate. It is true, that where courts of equity have once acquired jurisdiction, in consequence of the want of remedy elsewhere, the subsequent provision of a remedy by the legislative department has been held not to divest chancery of its jurisdiction, unless exclusive words are used in the act. It is better to increase the jurisdiction of courts, than to limit them; for thereby a choice of tribunals is left to suitors. But the principle has no application in this case; for the legislature have used, as we have seen, exclusive words, and the county courts and courts of chancery cannot be concurrent, except so far as they are made concurrent by the seventh clause of the fifteenth section.

By that section, it has been seen, that the circuit courts have concurrent jurisdiction with the county courts in all suits against executors and administrators, where the demand exceeds one hundred dollars. The Circuit Court has both common law and chancery jurisdiction, and where the demand is an equitable

one, there can be no doubt that, under this provision, the Circuit Court will take cognizance of such demand, as a court of equity.

The provisions of the act concerning administration evidently contemplate this exercise of jurisdiction, for the seventh section of article 4, p. 56, provides, "that any person having any demand against an estate, may establish the same by the judgment or *decree* of some court of record, in the ordinary course of proceedings, and exhibit a copy of such judgment, whether rendered before or after the death of the deceased, to the County Court."

It is apparent, then, from an examination of the different provision of our acts, that the general control over executors and administrators, given by the sixth clause of the eighth section of the act concerning courts, must be limited in its application to such cases as are not provided for in the more specific distribution of equity jurisdiction, to be found both in our act concerning administration, and in the act defining the jurisdiction and powers of the county and circuit courts. The clause appears to have been inserted through abundant caution. The legislature, notwithstanding the care with which they had devised, in the law of administration, suitable modes by which estates could be settled without the aid of courts of equity, except where the intervention of such court was expressly authorized, thought proper to invest the courts of equity with this general control over executors and administrators, to be exercised where the remedy at law was still inadequate.

The right of a security to recover from his principal the amount which he has paid in his behalf, is a right which may be established in a court of law; but his right to stand in the place of the creditor, as to all securities, funds, liens, and equities which he may have, is a right which can only be established in a court of equity. In Wright *vs.* Morley, (11 Vesey, 22,) the doctrine is thus stated by the master of the rolls: "I conceive, that, as the creditor is entitled to the benefit of all the securities the principal debtor has given to his surety, the surety has full as good an equity to the benefit of all the securities the principal gives to the creditor." In Parsons *vs.* Briddock (2 Vern., 60,) it was established, that the surety had precisely the same right that the creditor had, and was to stand in his place. In Cheeseborough *vs.* Milland, (1 Johns. Ch. Rep., 403,) the chancellor says:—"If the creditor to a bond exacts his whole demand of one of the sureties, that surety is entitled to be substituted in his place, and to a cession of his rights and securities, as if he was a purchaser either against the principal debtor or his co-securities." In Hays *vs.* Ward, (4 Johns. Ch. Rep., 123,) it was again said:— "It is a settled principle in the English chancery, that a surety will be entitled to every remedy which the creditor has against the principal debtor, to enforce every security, and to stand in the place of the creditor, and have his securities transferred to him, and to avail himself of those securities against the debtor. This right of the surety stands not upon contract, but upon the same principle of natural justice upon which one surety is entitled to contribution from another."

There can be no question but that courts of equity have jurisdiction in this and similar cases, in which sureties wish to avail themselves of every advantage which the creditor had against their principal. The amount involved places the

case within the concurrent jurisdictions of the county and circuit courts, and the demand being purely equitable, it falls to the Chancery side of the Circuit Court.

The statute of limitations is no bar to this demand, whether suit be instituted in the County Court or a Court of Chancery. Our act provides, that all demands not presented against an estate within three years, shall be forever barred; but this statutory provision was not designed to work the gross injustice of barring demands against an estate which never accrued until after the expiration of the three years. Suppose the testator had executed in his life a deed with covenants, and a breach of the covenant happens more than three years after his death, would an action for such breach be barred? Here the cause of action did not accrue until the three years had elapsed, for, until the complainant had paid the judgment against Mauzey's estate, he had no right of action.

The decree of the Circuit Court of Ray county, dismissing the bill of complainant, will therefore be reversed, and the cause remanded, and that court will proceed with the case in conformity to this opinion.

SCOTT, J., *dissenting*.

I do not concur in so much of this opinion as maintains, that a court of equity had jurisdiction to establish the demand of the appellant against the estate of Mauzey. The demand of the appellant was purely a legal one.

When this claim was established, then the right to substitution accrued. Until this was done, a court of equity could not know whether he had a claim or not. His demand was unliquidated and unascertained, and he could with no propriety ask to be substituted for the State, when it did not appear that he had any demand established against the estate of the deceased.

It was asking a court of equity to entertain jurisdiction of a matter exclusively cognizable at law. It is like the case of a legal creditor coming into a court of equity, for its assistance in the collection of a debt, before he had recovered judgment at law, and issued an execution. Every person having any demand against an estate, may establish the same by the judgment or decree of some court of record, in the ordinary course of proceedings. This demand exceeding one hundred dollars, the County Court and Circuit Court had concurrent jurisdiction over it, and the party might have established it in either court.

It is, however, a legal demand, and if he goes into the Circuit Court, he must take the common law side of that court. If a creditor having a legal demand against a debtor, foresees there will be a difficulty in the collection which will render the aid of a Court of Chancery necessary, would that authorize him to come into equity in the first instance, and there have his demand matured into a judgment? Would not that court refuse its assistance until he had obtained his judgment and execution at law? What is the difference between these cases? Whether the appellant has a claim against the estate of the intestate, is a matter to be determined in a court of law; whether that claim shall be substituted for the claim of the State, is a question for a court of equity, and which that court

cannot determine, until it is first ascertained at law that the demand has an existence.

The Circuit Court, then sitting as a court of chancery, did right in refusing its aid to the appellant, until he had shown that he had a right to that aid by the exhibition of a demand established at law against the estate of the deceased. The claim of the appellant did not accrue until he had actually paid the debt to the State for Mauzey. No laches can be imputed to the State, nor is she barred by any statute of limitations, unless expressly named. The State collected her demand against the deceased, from the security, three years after notice of the grant of letters of administration; the surety, then, had no claim until he actually paid the money, and could not be barred by the statute, which only extends to those having claims. If the principal in a promissory note, to which there is a surety, dies, and the creditor, relying on the surety, neglects to establish his demand against the estate of the principal, and, after the lapse of three years from the publication of notice of the grant of letters of administration, brings suit against the surety, is he barred? and if not, will not the surety be entitled to an indemnity, if he pays the debt out of the estate of the principal, notwithstanding three years may have elapsed since the granting of letters of administration? If a person enters into a covenant and dies, and there is no breach until after three years, is the covenantee barred of all recourse? I apprehend not. If the estate has been distributed, upon a bill of equity being filed, relief would be afforded.