E. A. B. GARESCHÉ, Appellant, v. M. D. LEWIS, ADMIN-ISTRATOR, Respondent.

June 10, 1884.

1. ADMINISTRATION — LIMITATIONS — EXHIBITION OF DEMANDS. — Under the statute, unmatured demands running to certain maturity are barred unless they are exhibited to the administrator within two years after the publication of notice of the grant of letters.

2. —— CORPORATIONS — STOCKHOLDERS. — The claim of a creditor of a corporation against a stockholder for unpaid stock, matures on dissolution of the corporation, and must be exhibited within two years.

3. —— The liability of a stockholder to a creditor of the corporation for unpaid stock becomes fixed by the insolvency and dissolution of the corporation, and then becomes a primary liability.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

SMITH & HARRISON, for the appellant: A mere abandonment of the corporate enterprise does not of itself work a dissolution of the corporation.— *Kansas, etc., Co.* v. *Sauer,* 65 Mo. 279 ; *Hill* v. *Fogg,* 41 Mo. 563 ; *State Bank* v. *Robidoux,* 57 Mo. 446. A contingent demand is really no demand until the contingency happens, and that the two years statute begins to run only on the happening of the contingency. — *Greenabaum* v. *Elliott,* 60 Mo. 25, 32 ; *Barton* v. *Rutherford,* 49 Mo. 255. A stockholder's liability is secondary and not primary. — *McLaren* v. *Franciscus,* 43

Mo. 452, 465 ; Thompson on Stockholders, sect. 29ᴐ ; Morawetz on Corporations, 616. The liability of the stockholder to the creditor is in the nature of a contract. The right and liability are several and not joint, and an action will lie at law; and this even irrespective of section 745. This is now well settled in this state.— *Perry* v. *Turner*, 55 Mo. 418, 428, and cases cited ; *Hogdson* v. *Cheever*, 8 Mo. App. 318, and cases cited; *Prov. Sav. Inst.* v. *Skating Rink*, 52 Mo. 552, 555 ; *Railway Supplies Co.* v. *Harbine*, 2 Mo. App. 134. We think that our administration law covers every case of a contract, whether contingent or not, made by a decedent in his lifetime. In such cases the source of the court's jurisdiction is the administration statute, and this court has powers full enough to cover every such case.— *Manville* v. *Edgar*, 8 Mo. App. 324; *Pierce* v. *Calhoun*, 59 Mo. 271 ; *Tetterington* v. *Hooker*, 58 Mo. 593; *Chambers' Admr.* v. *Smith's Admr.*, 23 Mo. 174.

GOTTSCHALK & BANTZ, and FINKELNBURG & RASSIEUR, for the respondent : All demands against the estate of any deceased person must be exhibited and presented for allowance within two years from the date of the letters of administration. — Rev. Stats., sects. 185, 189. *Cassatt* v. *Vogel*, 12 Mo. App. 323. Unmatured debts not so presented within two years, are barred. — *Hicks* v. *Jamison*, 10 Mo. App. 35 ; *Walker* v. *Byers*, 14 Ark. 246. The petition alleges that the Gravois Railroad Company became a dissolved corporation on the 20th day of August, 1878, hence, whatever rights plaintiff can claim against deceased as a stockholder, by virtue of section 745 of the corporation law, accrued to him on that day, and could have been preferred against the estate from that day on, either by presentment in the probate court or by an action in the circuit court. — Rev. Stats., sect. 745 ; *State Saving Association* v. *Kellogg*, 52 Mo. 583 ; Thompson's Liability of Stockholders, sect. 290 ; *Perry* v. *Turner*, 55 Mo, 425.

The dissolution of a corporation operates to mature the liability of its stockholders. — *Baker* v. *Bank*, 9 Metc. 182 ; *Terry* v. *Tubman*, 92 U. S. 156 ; *Hotch* v. *Dana*, 101 U. S. 205 ; *Larkin* v. *Willi*, 12 Mo. App 135.

BAKEWELL, J., delivered the opinion of the court.

The allegations of the petition are substantially as follows : —

Stone, a resident of St. Louis, died there, intestate, on the 20th of May, 1877. On the 2d of January, 1883, Lewis, public administrator, took charge of his estate. The Gravois Railroad Company was, on the 22d of December, 1859, incorporated by the State of Missouri. The Grand Avenue Railroad Company which was, on the 14th of February, 1874, a corporation organized under the laws of Missouri, on that date, issued certain first mortgage bonds, each for the sum of one thousand dollars, payable for value received to J. T. Howenstein or bearer on the 14th of February, 1884, with interest at ten per cent per annum, on presentation of the coupons attached. To each of these bonds were attached twenty coupons of $50 each, payable at intervals of six months from the date of the bonds. Before the maturity of any of the coupons, plaintiff, for value, acquired seventeen of these bonds with the coupons attached, and is now the holder and owner of them. The bonds in question are set out by their numbers. On each of these seventeen bonds, are due the coupons that matured on the 15th of August, 1881, 15th of February and August, 1882, and 15th of February, 1883, making $3,400, which with the interest from the maturity of the coupons, is due plaintiff. On the 7th of November, 1874, by virtue of an agreement in writing between them, and in consideration of the mutual covenants therein, the Grand Avenue Railroad Company leased to the Gravois Railroad Company and its assigns, for a term of twenty years from that date, that part of its road then built in St. Louis and the privilege of operating the

same, and sold and delivered to the Gravois Railroad Company its cars and live stock and other property, in consideration of which, the Gravois Railroad Company agreed with the Grand Avenue Railroad Company and with the present and future holders of its bonds, that it would guarantee to the holders by proper memoranda on these bonds the prompt payment at maturity of these bonds, and then assumed the payment at maturity of these bonds and their coupons. In pursuance of this agreement the Gravois Railroad Company received the property aforesaid, the Grand Avenue Railroad Company carried out the terms of the agreement, and the Gravois then and there, by proper indorsement on the back of these bonds, guaranteed the payment of them and their coupons. On the 1st of January, 1875, the Grand Avenue Railroad Company became wholly insolvent, then and there ceased to carry on business, disbanded its board of directors, discharged all its officers and employees, discontinued its corporate existence and was and still continues to be, without property of any kind. On the 20th of August, 1878, the Gravois Railroad Company also ceased business, disbanded it directors, discharged its employees and officers, sold its property, and then and there became, and ever since has been, dissolved and insolvent.

The capital stock of the Gravois Company was 6,000 shares, of the par value of $50 each, of which Stone owned and held, at the time of the issuing of the bonds and up to his death, 4,000 shares, on which nothing whatever was paid, on which account plaintiff charges that defendant, as administrator of Stone, owes him the amount due upon the coupons aforesaid with interest, for which he asks judgment. Defendant by his answer admits the allegations as to the death of Stone and administration of defendant, and says that, if the Gravois Railroad Company ever existed it was dissolved long before August 20, 1878. The answer

puts the other allegations of the petition in issue, and further answers substantially as follows : —

8. Stone died on April 7, 1877. Letters were granted on May 21, 1877, to his widow, who qualified, and on 4th day of June, 1877, gave the notice required by law, which was duly published. The facts as to this notice are fully set out, so as to show a compliance with the law. By reason of her marriage, Mrs. Stone's letters were revoked on May 21, 1882, and defendant became administrator *de bonis non*. By reason of which, the claim of plaintiff is barred, because not exhibited within two years of the date of letters, nor within two years of the date of notice of letters.

9. The cause of action did not accrue within five years next before the commencement of this action.

10. Stone died intestate, leaving five children, whose names are set out, who, together with his widow, Elizabeth, since intermarried with James Hall, are alone entitled to any interest in his estate. These persons are all living and are necessary parties to this action.

Plaintiff moved to strike out the eighth, ninth, and tenth pleas. The court sustained the motion as to the tenth plea, and overruled it as to the other pleas.

The reply of plaintiff denied all new matter in the answer, except the allegations as to administration, and notice by the administrator, which he expressly admitted.

Defendant then moved for judgment upon the pleadings, upon the ground that, by the admissions, the action was not brought within the time required by law, and that there was no exhibition of plaintiff's demand within the time required by law. This motion was sustained and there was final judgment for defendant.

1. Under the statute of 1865, in force at the time the letters were granted upon Stone's estate, where a claim was exhibited to the administrator within two years, it might be presented for allowance during the third year. The time for presenting the claim for allowance was reduced to two

years by the revision of 1879. This change did not affect claims against estates in which letters had been granted and publication of notice made before November 1, 1879, the date that the revision went into effect. *Ambs* v. *Caspari*, 13 Mo. App. 587. If the present claim was one that might have been proved against the estate before June 4, 1880, there can be no doubt that the special statute of limitation was a bar and the judgment should be affirmed.

The mere fact that a demand is not due is not necessarily a sufficient excuse for its non-presentation against the estate, because the statute provides (Rev. Stats., sects. 205, 206) that when the demand is not due, the court may adjust the same, and render judgment for the amount, or, at the option of the parties, by rebating therefrom at the rate of six per cent, until due; if the parties do not agree to a rebate, then no execution shall issue upon the judgment until the demand becomes due. It has been repeatedly decided that the special statute of limitation begins to run from the time that the substantial right of recovery accrues (*Benton* v. *Rutherford*, 49 Mo. 258; *Greenabaum* v. *Elliott*, 60 Mo. 32; *Chambers* v. *Smith*, 23 Mo. 174; 8 Mo. 169; 9 Mo. 227); and that it does not begin to run in the case of a dormant warranty, until a right to a substantial recovery accrues. *Chambers* v. *Smith*, 23 Mo. 174; *Miller* v. *Thornton*, 8 Mo. 169. But whilst such inchoate and merely contingent demands need not be exhibited until there is a substantial right of recovery, the statute seems to contemplate that all claims capable of being exhibited, whether due or not, if running to certain maturity, shall be barred if not exhibited within the period limited by the administration law for their exhibition to the administrator.

In *Hicks* v. *Jamison* (10 Mo. App. 35), the note was dated November 19, 1868, and matured on the 19th of November, 1878, having ten years to run. On December 15, 1877, after the administrator had published notice of

final settlement, the note was presented against the estate for allowance, notice being waived. The probate court refused to allow the claim. This court held that the demand was properly rejected, because the demand was not exhibited within the first two years of administration. As the notice to the administrator is sufficiently made by proving up the demand in legal form (*Spaulding* v. *Suss*, 4 Mo. App. 541), it is evident that it was held in this case that the statute began to run from the date at which the demand might have been exhibited, and that as the demand was a note running to certain maturity, it might have been exhibited at any time after the grant of letters, and the demand was barred against the estate though actually not due when offered for probate.

2. It is, however, contended by appellant that the case presented is not one of an absolute liability running to certain maturity, but that of a contingent liability which could not be exhibited against the estate until the liability was fixed by the happening of the contingency. The petition, however, alleges, not only that both corporations have parted with all their property and are wholly insolvent, and that this condition of things existed as to both of them before August 20, 1878, but that they are both dissolved, and have ceased to have any existence, the Grand Avenue since January, 1875, and the Gravois since August, 1878. As plaintiff is not a judgment creditor, this allegation as to the Gravois was necessary in order to give him any standing in court under the statute. The liability of the stockholder of the corporation to its creditors is not at first a primary, but a secondary, liability; but when the corporation is utterly penniless and dissolved, the liability of the stockholders to the creditors is fixed, and, by the terms of the statute, is a direct and primary liability, and the contingency contemplated by the statute has happened. The claim of the trustees of a dissolved corporation against its stockholders, and of the creditors of a dissolved cor-

poration against its stockholders for unpaid stock, matures on the dissolution of the corporation, and if not presented for allowance against the estate of a deceased stockholder within the time of limitation, it is barred. *Larkin* v. *Willi*, 12 Mo. App. 135.

3. Appellant contends that the dissolution of the Gravois Company, which had assumed these bonds, could not operate to hasten the maturity of the coupons, and as these coupons did not mature until within two years before the beginning of this suit against the estate of the stockholders, there was no bar by virtue of the special statute of limitation. Either there was a liability of the corporation at the time of its dissolution or there was none. If there was no such liability, *cadit quæstio*, we have nothing to talk about. If there was such a liability, it is this liability which the statute permits the creditor to enforce directly against the stockholder. It then becomes a liability of the stockholder, directly enforceable against him to the amount of his stock. That it had not matured is immaterial, where the action is against the stockholder's estate, because the proceeding is not to enforce its collection before maturity, but to exhibit it to his administrator and prove it against his estate. The administration law, for wise and obvious reasons, requires that this shall be done within a certain period after the date of letters. The policy of our administration law looks to the speedy settlement of estates, and the placing of the residue in the hands of the distributees as soon as may be, freed from all claims of which notice can be given, and to the freeing of the real estate from claims for the debts of the deceased. It requires a distribution at the end of every year, and that this should be made advisedly. The law, in pursuance of this policy, provides for the discharge of unmatured indebtedness of the estate by a system of discounting unmatured demands where the parties will consent, and where no such consent can be had, it requires that the demand, whether matured or not, shall be exhibited against

the estate where this can be done, as it can be done in the case of all demands running, as in the case before us, to certain maturity.

We are of opinion that the circuit court properly held in the present case that the letters of administration upon the estate of the deceased stockholder having been granted on May 21, 1877, the claim of a creditor of the corporation which was admitted to be utterly without property and actually dissolved on August 20, 1878, was barred under the special statute of limitation, if not exhibited before June 5, 1883, and that it was immaterial that the demand against the company which the claimant was seeking to enforce against the estate of the stockholder had not been due for two years at the date of the exhibition of the demand against the estate. The judgment is therefore affirmed. All the judges concur.