### WEBBER *v.* HOVEY.

CORPORATIONS — VOLUNTARY DISSOLUTION — UNPAID STOCK SUB-
  SCRIPTIONS—STATUTE OF LIMITATIONS.

> Under section 12 of the statute in relation to the voluntary dis-
> solution of corporations and the appointment of receivers
> therefor (chap. 282, 2 How. Stat.), providing that, if there
> shall be any sum remaining due upon any share of stock sub-
> scribed in such corporation, the receiver shall immediately
> proceed to recover the same, the statute of limitations begins
> to run as against such right of action immediately upon the
> dissolution of the corporation and the appointment of a
> receiver.

Appeal from Ionia; Dodds, J., presiding. Submitted
November 21, 1895. Decided December 30, 1895.

Bill by Andrew J. Webber, receiver of the Ionia Man-
ufacturing Company, against Silas P. Hovey and others,
to recover unpaid subscriptions to the capital stock of said
corporation. From a decree dismissing the bill, complain-
ant appeals. Affirmed.

*McGarry & Nichols* and *M. A. Nichols,* for complain-
ant.

*William O. Webster, Chaddock & Scully,* and *Ben
Vosper,* for defendants.

LONG, J. The bill sets forth, in substance, that the
Ionia Manufacturing Company was organized on or about
the 29th day of November, 1882, for the purpose of man-
ufacturing windmills and other articles, under an act
entitled " An act for the incorporation of manufacturing
companies," and all acts amendatory thereto, being chap-
ter 124, 1 How. Stat.; that the corporation continued to
do a manufacturing business from the time of its incor-

poration until 1887, at which time it became apparent to the stockholders that it would not be profitable to continue the business longer; that on the 17th day of May, 1887, Andrew J. Webber and others, constituting a majority of the board of directors, filed a petition in the circuit court for the county of Ionia for the dissolution of the corporation, under 2 How. Stat. chap. 282, being an act entitled "The voluntary dissolution of corporations, and the abatement of suits by and against them," alleging the following reasons in their petition for its dissolution:

1. That the capital stock had been reduced until it was unsafe longer to continue business.

2. That the property, consisting mainly of machine shop, machinery, and foundry, was then stopped and idle, and could not, by said directors, be run and managed with profit to the stockholders.

3. That owing to the large indebtedness of the corporation, and its ill success in business, if continued, it would soon, as a corporation, become insolvent.

The bill further sets forth that on the 21st day of May, 1887, a decretal order was made by the court that all parties interested in the corporation should appear before a commissioner, and show cause why such corporation should not be dissolved and a receiver appointed; that, on the hearing before the commissioner, it appeared that there was $4,650 of paid-up stock, and that there had been paid 80 per cent. on stock of the face value of $19,500, which was all of the stock issued by the corporation; that the total indebtedness amounted to $4,081.20; that upon the coming in of the report of the commissioner, and upon the 2d day of July, 1887, the court made an order dissolving said corporation, and appointing the complainant receiver, with the usual powers, etc., upon filing the requisite bond; that the complainant had complied with said order, and had been in the discharge of his duties as such receiver from such time up to the time of filing the bill of complaint; that the inventory and appraisal of all the property of the corporation at the time complainant entered upon his duties

as such receiver show it to have been worth $6,024.70, which was divided as follows: Personal property, $615.88; choses in action, etc., $408.32,—the balance of said sum being in real estate.

The bill further sets forth that the complainant, immediately on entering upon his trust, proceeded to collect the debts owing to the corporation, as far as possible, but only succeeded in collecting $55.90 on the choses in action; that he sold certain of the personal property, amounting to $281.24; that the complainant and other stockholders of the corporation believed at that time that it would be possible to sell the real and personal property and accounts due the company, and realize sufficient to satisfy the indebtedness of the corporation and pay the expenses of the trust; that by reason of the irresponsibility of a large number of parties owing the corporation, and the dilapidated condition of the personal property, the complainant was able to realize from the sale of the same only $345.14; that on the 31st day of March, 1888, he obtained an order from the court giving him the right to sell any and all of the real estate in his possession for the purpose of paying the indebtedness of the corporation, and that by virtue of said order, on the 27th day of April, 1888, he sold the parcel described as "No. 1" to Frederick Graff, one of the directors of the corporation; that on the day of the sale no one was present but the directors of said company, and no bids were made, except as it was understood that if the property could be sold, and time given, certain parties would buy the premises, and pay the sum of $3,000 therefor; that upon this understanding the property was struck off to said Graff; that it was understood that said Graff, with others interested in the settlement, would try to dispose of the property upon time, and apply the moneys received or securities taken upon the indebtedness of the corporation, in order to avoid making an assessment upon the stockholders for the balance of their unpaid stock subscriptions, and that this understanding was agreed to by all parties interested; that upon the 27th day of July,

1891, under an order of the court, the complainant sold the parcel of land designated as "No. 2," for the sum of $410, to John Baldie, another director and stockholder, under the same arrangement as was made with Graff, it being understood that in case a buyer could be found, upon time or otherwise, the property would be turned over to him, and the matter closed up in that manner; that the complainant had been making efforts at all times to sell and dispose of the property to the best advantage of all parties interested in the matter.

That upon the 1st day of May, 1894, the indebtedness had swollen to the amount of $6,400; that at that time complainant had no money in his hands with which to satisfy the indebtedness; that the said Graff and Baldie refused to pay complainant the amount of their bids upon the real estate, claiming that they would have made no bids whatever, if they had believed that they would have to furnish the money; that upon the 3d day of May, 1894, complainant petitioned the court that a decree might be made setting aside the former sales to Graff and Baldie, and permitting complainant to dispose of both real and personal property remaining on hand at public vendue to the highest bidder, and gave notice to defendants of such application; that upon the 19th day of May, 1894, such sales were set aside by the court, and a decree made empowering complainant to sell any and all of said real estate or personal property as prayed in said petition; that, in pursuance of such order, complainant proceeded to advertise and sell parcel No. 1, which was sold to Asa Hoag for the sum of $1,000, he being the highest bidder therefor; that parcel No. 2 was sold to Herbert B. Webber for the sum of $200, he being the highest bidder therefor; that said sales were confirmed upon the 19th day of November, 1894, by the court; that, upon the confirmation, complainant was paid said sums, and was ready to dispose of the same as the court might direct; that, at the time of the filing of the bill of complaint, the debts of the company amounted to $6,400, together with the interest

from May 3, 1894; that the expenses of the trust would be at least $1,000; that the complainant had in his hands only $1,200 with which to satisfy the indebtedness, leaving a deficit of $5,000 and upwards; that by virtue of chapter 282, 2 How. Stat., complainant filed his bill for the purpose of collecting the sums due upon the unpaid stock, there not being sufficient assets to pay the debts and expenses of winding up its affairs.

A number of the parties defendant appeared by their solicitors in the cause, and pleaded the statute of limitations, the others being brought in by publication. The case came on to be heard upon said pleas in the circuit court, and upon such hearing a decree was entered holding such pleas to be well pleaded, and dismissing the bill of complaint, from which the complainant appeals to this court.

It is admitted in the argument that no call was ever made by the directors of the company for the balance of the unpaid stock subscriptions. The contention of the complainant is that the unpaid subscriptions to the capital stock of the corporation are a trust fund in the hands of its members, against which the statute of limitations does not begin to run until a call has been made by the directors, or by an assignee under the authority of the court, or some adverse action has been taken on the part of the company. On the other hand, the defendants contend that the statute began to run immediately upon the appointment of the receiver. The court below, in entering a decree dismissing complainant's bill, was of the opinion that under sections 8185 and 8199, 2 How. Stat., the subscriptions to stock became due at the time the receiver was appointed.

We must determine the question upon the phraseology of the statute. Chapter 282, 2 How. Stat., provides for the voluntary dissolution of corporations under certain circumstances; and the court, in making the decretal order in reference to the Ionia Manufacturing Company,

found that the corporation should be dissolved, and appointed a receiver to wind up its affairs.

Section 12 of that chapter provides:

"If there shall be any sum remaining due upon any share of stock subscribed in such corporation, the receiver shall immediately proceed and recover the same, unless the person so indebted shall be wholly insolvent; and for that purpose may file his bill in any court having equity jurisdiction, or may commence and prosecute an action at law for the recovery of such sum, without the consent of any creditors of such corporation."

Section 26 of that chapter provides that—

"After a final dividend is made, and the debts of any such corporation are paid, if there shall remain any surplus in the hands of the receivers, they shall distribute the same among the stockholders of such corporation, in proportion to the respective amounts paid by them, severally, on their shares of stock."

The statute contemplates that when the order of dissolution is made, and a receiver is appointed to wind up the affairs of the corporation, he shall immediately call in the unpaid subscriptions to the stock. If not paid, he is authorized to bring suit at once upon his appointment, and the statute makes it his duty to do so "unless the person so indebted shall be wholly insolvent." It is true that if a company is still in existence, and desires to use any portion of its capital stock, it can be called in only by action of the board as provided by the statute, and no right of action would accrue against a stockholder until such call had been made; but where the corporation has been dissolved, and a receiver appointed, quite another condition of things exists. The balance of the unpaid subscriptions to the capital stock is then due and payable; and the receiver, by the terms of the statute, is not only authorized, but it is made imperative upon him, to "immediately proceed and recover the same," either in equity or at law, and this without the consent of any creditor. The stockholder holding unpaid stock is at all times in-

debted to the corporation for such unpaid balance. If an action at law has been commenced for a labor debt against the corporation, and judgment obtained, and execution returned unsatisfied, the creditor can at once sue the stockholder, and recover up to the amount of the unpaid balance upon his subscription to stock, and this without any formal call or demand for such balance. But in the present case there was no assessment to be made by the receiver. The amount of the unpaid subscriptions to the capital stock was fixed and certain. The aid of the court was not necessary in fixing the amount, or to make an assessment or call for the amount unpaid. All that remained to be done was for the receiver to sue for these amounts. The right of action, then, accrued against the stockholders immediately upon the dissolution of the corporation and the appointment of the receiver, which was July 2, 1887. The present bill was filed December 10, 1894,—more than seven years after the right of action accrued.

Rev. Stat. Mass. chap. 36, § 30, provides that, "if any loss or deficiency of the capital stock in any bank shall arise from the official mismanagement of the directors, the stockholders at the time of such mismanagement shall, in their individual capacities be liable to pay the same." Under this provision, it was held in the case of *Baker* v. *Atlas Bank*, 9 Metc. 182, that, if the stockholders were liable to a suit of the creditors, it would be barred by the statute of limitations in six years from the time of the loss or deficiency of the capital stock.

In *Com.* v. *Cochituate Bank*, 3 Allen, 42, it was held that the legislature had the power to pass an act authorizing the receivers of a banking corporation, against which a perpetual injunction had been ordered, to make a ratable assessment upon the stockholders of an amount in their opinion sufficient to make up the probable deficiency of funds in their hands for the redemption of its bills, subject to the approval of the court, upon due notice to all parties, etc. It was held that a suit in equity for the

confirmation of such assessment could not be brought more than six years after the injunction upon the bank was made perpetual.

In *Garesché* v. *Lewis*, 15 Mo. App. 565, 93 Mo. 197, it was held that the unpaid balance upon a subscription to stock in a corporation became due upon the dissolution of the corporation, and, where creditors sought to enforce payment of such subscription, the action must be brought within the statutory period from such dissolution.

In *Franklin Savings Bank* v. *Bridges*, (Pa. Sup.) 8 Atl. 611, it was held that the statute of limitations begins to run upon a subscription to the capital stock of a corporation, which afterwards becomes insolvent, from the date of its assignment for the benefit of creditors, and not from the time of a call for the unpaid balance of such subscription.

In *Terry* v. *Tubman*, 92 U. S. 156, it was held that, where the charter of a bank contained a provision binding the individual property of its stockholders for the ultimate redemption of its bills in proportion to the number of shares held by them respectively, the liability of the stockholders arose when the bank refused or ceased to redeem, and was notoriously and continuously insolvent; and that, such insolvency having accrued prior to June 1, 1865, an action against the stockholders not commenced by January 1, 1870, was barred by the statute of limitations of the State of Georgia.

We are aware that it was said in *Scovill* v. *Thayer*, 105 U. S. 155, that—

" It is well settled that when stock is subscribed to be paid upon call of the company, and the company refuses or neglects to make the call, a court of equity may itself make the call, if the interests of the creditors require it. The court will do what it is the duty of the company to do. But under such circumstances, before there is any obligation upon the stockholder to pay without an assessment and call by the company, there must be some order of a court of competent jurisdiction, or, at the very least, some authorized demand upon him [the stockholder] for

payment; and it is clear the statute of limitations does not begin to run in his favor until such order or demand."

But in that case the court was dealing with, and giving construction to, a statute under which the only duty of the assignee was to collect in upon the unpaid stock a sum which, with the other assets of the company, would be sufficient to satisfy the company's creditors; and it was said:

"If it should turn out that the other assets were sufficient, no action would lie against the stockholder for the balance due on his stock; for if, in a bankruptcy proceeding, any surplus remained after payment of debts, it would go to the company, and not to the stockholders, and we have seen that the company in this case would have no right to any surplus."

In the present case, however, our statute requires the receiver to sue for and collect those unpaid subscriptions, and, if any surplus remains after the payment of the debts, then, by section 26 of the act, the receiver shall distribute it among the stockholders, "in proportion to the respective amounts paid by them, severally, on their shares of stock."

We think it clear that the action is barred by the statute of limitations, and the court properly dismissed complainant's bill. That decree will be affirmed, with costs.

The other Justices concurred.