WILLIAM H. BAXTER *vs.* GALEN C. MOSES and others.

Cumberland. August 8, 1885.

*Equity. "Judgment creditor." Nulla bona. R. S., c. 46, § 52. Statute of limitations. Corporations. Directors. Trusts.*

When a creditor seeks by a process in equity to reach equitable interests,

choses in action, or the avails of property fraudulently conveyed, for the payment of debts, (not by virtue of the R. S., c. 77, § 6, part 10,) the bill should state that execution has been taken out on a judgment against the debtor and *nulla bona* returned thereon.

The official return on the execution is the only sufficient evidence that a debt cannot be legally collected, and a demurrer to a bill, which alleges the insolvency of the debtor, is not a waiver of a right to ask for a production of such evidence.

No chancery jurisdiction, however enlarged takes upon itself the collection of legal debts before legal remedies are exhausted.

The words "judgment creditor" in R. S., c. 46, § 52, mean a judgment creditor who has first exhausted all legal remedy. In a creditor's bill against a corporation, in which its officers are made parties only in their representative character, discovery may be had from them, but relief cannot be had against them; the decree for relief goes against the corporation.

Upon legal titles and legal demands courts of equity adopt and apply statutes of limitations acting upon them by analogy to law.

The directors of a corporation hold the corporate property under an implied or constructive trust for the benefit of creditors. It is not an express trust, not a purely equitable trust, but something which the law for equitable purpose construes to be a trust.

One who is not actually a trustee, but upon whom that character is forced by a court of equity, may avail himself of the statute of limitation.

On appeal and exceptions.

Bill in equity to collect certain bonds issued by the Androscoggin Railroad Company and certain judgments against that company.

The presiding justice sustained a demurrer to the bill, and ordered that the bill be dismissed with costs; to this order and ruling the complainant appealed and alleged exception.

[Bill.]

"State of Maine. Cumberland, ss. William H. Baxter, of Deering, in the county of Cumberland, aforesaid, complains against: Oliver Moses, Galen C. Moses, John H. Kimball, Charles Russell and James D. Robinson, of Bath, in the county of Sagadahoc, and William P. Frye, of Lewiston, in the county of Androscoggin, and Edwin Plummer, of Lisbon, in said county of Androscoggin, and the Androscoggin Railroad Company, a corporation duly chartered by law and doing business in said county of Cumberland, and represents and avers:

"1. That prior to the first day of January, A. D. 1858, the said Androscoggin Railroad Company was duly chartered and organ-

ized under the laws of this state and operated a railroad, by it constructed under the provisions of their charter from a point near Leeds Junction, on the railroad, then known as the Androscoggin and Kennebec Railroad, in the county of Androscoggin, to the town of Farmington, in the county of Franklin.

" 2. That subsequent to said period of time, said Androscoggin Railroad Company contracted and operated an extension of said railroad, from said point on said Androscoggin and Kennebec railroad to the town of Brunswick, in said county of Cumberland, and to the city of Lewiston, in said county of Androscoggin, and still operate the same through the said company or their lessees.

" 3. That upon said first day of January, A. D. 1858, the said Androscoggin Railroad Company duly issued its bonds, to the amount of two hundred thousand dollars, in several denominations, by the provisions of which the principal was payable at the office of the treasurer of said company, on the first day of January, A. D. 1870, in the stock of the company, at par, and the interest thereon was payable semi-annually, on the first day of January and July, in each and every year after said date of January 1, 1858, and annexed to said bonds coupons, to the amount of the several semi-annual interest sums coming due thereon. Said bonds were payable to S. H. Read, or bearer, and issued under the seal of said company.

" 4. That said bonds remain unpaid and undischarged in principal and interest to the extent hereinafter described, to wit :

. . . [ 18 bonds of $500 each ; 13 bonds of $200 each ; 111 bonds of $100 each ; a large number of coupons annexed to each bond. ]

" 5. That your complainant is the legal owner of said bonds and coupons, and the amounts due upon them are due to him, the said complainant.

" 6. That said Oliver Moses, Galen C. Moses, John H. Kimball, Charles Russell, James D. Robinson, William P. Frye and Edwin Plummer, are directors of said Androscoggin Railroad Company. That said John H. Kimball is president and said Galen C. Moses is treasurer of said company.

" 7. That said persons have held said offices and trusts for a long time heretofore, and as such trustees and officers have taken the income and profits of said railroad, and now hold large amounts of money on account of and belonging to said railroad company.

" 8. That said railroad company hold no other property than that so as aforesaid taken and held by said persons.

" 9. That said complainant is a creditor of said Androscoggin Railroad Company, beyond and beside the amount of said bonds and coupons, upon and to the amount of the following described claims, viz: . . . [seven judgments.]

" That the said complainant has demanded of the said Androscoggin Railroad Company, and said directors and treasurer, at the office of the treasurer of said company, the payment of said bonds and coupons, according to the terms and conditions of said instrument, and offered to surrender said bonds and coupons as required by the terms therein recited, and the payment of the other claims held by your complainant, herein before described, and payment of each and every and all of said bonds and coupons and other claims, was by said company, directors and treasurer refused, and have never been paid, or otherwise discharged, to the time of the making of this complaint, but now remains in full force, and due to your complainant.

" That said directors and treasurer have received large amounts of money belonging to said company, and have unlawfully and fraudulently distributed the same among themselves, and are still holding the same, to an amount more than sufficient to pay the claims of your complainant herein before described, and all other lawful claims against said company, in fraud of your complainant's rights in the premises ; that he can not reach said funds, by attachment, or any process in the courts of law granted, or practiced, and is in danger of losing his whole claim and demand against said company by the fraudulent and unlawful acts and practices of said directors and treasurer, without such relief as your honors may grant him in equity.

" And your complainant is informed and believes and therefore charges that the said directors and treasurer have received from

the Maine Central Railroad Company, a corporation existing under the laws of this state, a large sum of money for the use and lease of said railroad of said Androscoggin Railroad Company, to wit: the sum of two hundred and sixty-three thousand dollars, and now hold the same; that the particular days and times when so received, and the particular individuals of said board of officers to whom said sum was paid, he is unable now to give information to the court, but does charge and inform the court that said sum was received by the directors of said Androscoggin Railroad Company, from said Maine Central Railroad Company, and is now held by said respondents.

" And the complainant is informed and believes, and therefore charges, that said respondents received from the Maine Central Railroad Company, on account of a lease of said Androscoggin Railroad, executed A. D. 1871, to wit: on the twenty-ninth day of June, A. D. 1871. the sum of thirty-three thousand thirty-three hundred and thirty-three dollars and thirty-three cents, and scrip of said Maine Central Railroad Company to the amount and value of one hundred and ten thousand dollars, and two thousand shares of the capital stock of said Maine Central Railroad Company of the value of one hundred and twenty thousand dollars, and all of the value of two hundred and sixty-three thousand three hundred and thirty-three dollars and thirty-three cents, and that said directors have fraudulently and without lawful authority, distributed the proceeds of the same among themselves, and now withhold the same from the creditors of said Androscoggin Railroad Company, and in fraud of their rights in the premises.

" And your complainant avers that the said Oliver Moses, Galen C. Moses, John H. Kimball, Charles Russell, James D. Robinson, William P. Frye and Edwin Plummer, hold in their own names and under their control, nearly all the stock of the said Androscoggin Railroad Company, to wit, a much greater number than a majority in number of said shares, the exact number of which is to your complainant unknown, and that they control the action of said company in their own interests and fraudulently combine against the interests of the creditors of said

company, to withhold all the property so as aforesaid received, from the creditors of said company, and neglect and refuse to make any report or return of their doings and actings as said officers, and have so neglected for more than ten years last past, or to give any information of the financial condition of said company, although your complainant has sought such information through process of this court, and that he can not, by reason of their fraudulent and unlawful practices, obtain a satisfaction of his claims of the said company.

" And your complainant further represents that he brings this bill in behalf of himself and all other unsatisfied creditors of said Androscoggin Railroad Company, who shall come in and join in this bill, and by leave of court become parties thereto.

" And now your complainant seeks relief in the premises of this court sitting in equity, and prays that said respondents, each and all of them severally, be required to make full answer upon their several oaths to all the matters herein alleged, and for general relief in the premises, as well as for the special relief hereinafter prayed for.

" And for special relief he prays that said directors may be held to account for all monies and property by them or either of them received for and on account of said Androscoggin Railroad Company, since the twentieth day of June, A. D. 1871, and for all monies and property belonging to said company, by them or either of them held on said twentieth day of June, A. D. 1871, to the end that the same may be turned over to a receiver for such disbursement to the creditors of the company as they are entitled to have in the payment and extinguishment of their claims and demands, and,

" That your honors will appoint a receiver to receive and dispose such monies and property and make such orders and decrees as shall be necessary to determine the manner and amount of disbursements to be made, and,

" That your honors will appoint a master to determine the amount due such creditors as may become parties to this bill. "

The case was twice argued to the law court.

*R. P. Tapley*, for the plaintiff.

The plaintiff being a creditor of the corporation is entitled to some remedy to enforce payment of his debt. He has no adequate remedy at law. The funds, held by the directors and treasurer, are all the property possessed by the corporation, and is money held on their person. Their possession of it is the possession of the corporation. The plaintiff cannot reach these funds by an action at law. They cannot be attached in specie, nor reached under the process of foreign attachment. *Pettingill* v. *And. R. R. Co.* 51 Maine, 370; *Sprague* v. *Steam Nav. Co.* 52 Maine, 592; *Bowker* v. *Hill*, 60 Maine, 172; *Donnell* v. *Railroad Co.* 73 Maine, 567.

There is no privity of contract between the officers and the corporation. *Skowhegan Bank* v. *Farrar*, 46 Maine, 295.

One director may hold all the funds, or each a part, and it is still the possession of the corporation. Holding, they are still directors and responsible to the corporation as directors. They owe the corporation nothing. They hold as directors the funds which came into their hands as directors. They cannot absolve themselves from the liabilities and duties devolving upon them as trustees and directors. *McLarren* v. *Brewer*, 51 Maine, 405.

It is their duty to pay the lawful demands against the corporation, when they have the means. They hold, as to creditors, the relation of trustees. Being in possession of trust funds they are charged with a knowledge of the trust and bound to account therefor to those beneficially interested. Creditors first and shareholders afterwards. Story, Eq. Jur. § 1252; Thompson's, Officers and Agents of Corporations, 395–398; *Wood* v. *Dummer*, 3 Mason, 308; *Curran* v. *Arkansas*, 15 How. 305; *Railroad* v. *Howard*, 7 Wall. 409; *Lyman* v. *Benney*, 101 Mass. 562.

The duty being cast upon the directors to pay the debts of the corporation from the funds of the corporation, the law will secure to the creditor the performance of that duty in some manner. It can only do this through the channels of the equity powers of the court, and unless it can thus be done creditors in such case are remediless.

This court has ample power in the premises, having general

equity powers.    It can afford ample and adequate remedy in the premises, and require the application of the funds of this corporation to the payment of the plaintiff's claims, and it cannot do it in any other way than by this process.    *Webster* v. *Clark*, 25 Maine, 316;  *Wiggin* v. *Heywood*, 118 Mass. 514;  Story, Eq. Jur. § § 1216, 1252;  *Frost* v. *Belmont*, 6 Allen, 152;  *Gordon* v. *Lowell*, 21 Maine, 257;  *Vose* v. *Grant*, 15 Mass. 521;  *Spear* v. *Grant*, 16 Mass. 15;  *Carver* v. *Peck*, 131 Mass. 293;  *Case* v. *Beauregard*, 101 U. S. 691.

It is said the bill does not aver the issue of execution and the return of *nulla bona* as to the judgment set out in the bill, and *Howe* v. *Whitney*, 66 Maine, 17, is cited.    This was a decision of the court acting under a limited jurisdiction, as a part of the requirement that the complainant must exhaust his remedy at law.

A court having general and unlimited equity jurisdiction may afford relief concurrently with the common law courts, if the remedy is more speedy, less onerous to the parties more perfect in its results.    See *Jones* v. *Newhall*, 115 Mass. 244.

But we have no occasion in this case to discuss the question, in answer to the objections raised.    The case of *Howe* v. *Whitney*, *supra*, differs essentially from the case at bar.    In that case the plaintiff was seeking payment from property of his debtor that had been conveyed to another.    His proceeding was against that other and not the debtor.    So are all the cases cited in the opinion of the court in that case clearly distinguishable from the case at bar.    The reason of the requirement is plain.    No such reason exists here.    The case at bar is against the debtor alone. It seeks to reach funds in the hands of the debtor, for the possession of the directors is the possession of the corporation debtor.    They hold as directors.    They are *quo ad hoc* the debtor.

Courts of equity do not require useless proceedings.    It ill becomes equity to make such requirement.    It is not equity to do it, but the reverse.    In *Corey* v. *Greene*, 51 Maine, 116, a levy was held "unnecessary because it would be nugatory." "The creditor exhausts her remedy at law without it."    See

also, *Richards* v. *Allen*, 17 Maine, 299; *McCarthy* v. *Mansfield*, 56 Maine, 541; *Lawrence* v. *Rokes*, 61 Maine, 44; *Case* v. *Beauregard*, 101 U. S. 688.

The only object in obtaining judgment and issuing execution thereon is to show that there is no remedy at law. It is only evidential as to the matter of jurisdiction. The fact may be shown by any other evidence. There is nothing talismanic about a return of *nulla bona*. The case here shows by admission that there was nothing to be taken on execution.

It is argued that the plaintiff's claims were stale. This cannot in any sense apply to the judgments, being the judgments of the highest judicial tribunal in this state.

The position is a novel one. With whatever of propriety a debtor may meet an honest claim in that way, before it has received the confirmation of the court, we think it can never be imposed as a bar in an equity suit during the period which the law allows the creditor to enforce it. Until some statutory limitation intervenes, the character and impress, the court has given the claim, remains unchanged. It is said that we have delayed too long, that we have been too indulgent. It must be remembered that it is the creditor who is saying this.

There is no laches in this state between a promisor and a promisee, or debtor and creditor until the period, the law has fixed as a limitation, has elapsed.

The laches which affects a party in both law and equity, is lapse of time in asserting a claim. *Lansdale* v. *Smith*, 106 U. S. 392; Story's Eq. § 1520; *Farnam* v. *Brooks*, 9 Pick. 242; *Dodge* v. *Essex Ins. Co.* 12 Gray, 65; Wood, Lim. of Actions, § § 58, 62.

*Frye, Cotton and White* and *William L. Putnam*, for the respondents, cited: *Piscataqua F. & M. Ins. Co.* v. *Hill*, 60 Maine, 178; *Stevens* v. *Moore*, 73 Maine, 559; Story, Eq. Pl. § § 251, 484; *Munday* v. *Knight*, 3 Hare, 497; *Mooers* v. *K. & P. R. R. Co.* 58 Maine, 279; Angell, Lim. § § 174–178; *Carroll* v. *Green*, 92 U. S. 509; *Baker* v. *Atlas Bank*, 9 Met. 182; *Taylor* v. *Bowker*, 111 U. S. 110; *Hughes* v. *Farrar*, 45 Maine, 72; *Burbank* v. *Bethel Steam Mill Co.* 75 Maine,

373; *Webster* v. *Clark,* 25 Maine, 313; *Webster* v. *Withey,* 25 Maine, 326; *Corey* v. *Greene,* 51 Maine, 114; *Hartshorn* v. *Eames,* 31 Maine, 93; *Griffin* v. *Nitcher,* 57 Maine, 270; *Howe* v. *Whitney,* 66 Maine, 17; *Jones* v. *Green,* 1 Wall. 330.

PETERS, C. J. This is a creditors' bill to collect certain debts, principally judgments, which are due from the Androscoggin railroad company; and is before us on demurrer.

It is not claimed that the bill is maintainable under part 10, § 6 of ch. 77 of the R. S. That provides a remedy for a single creditor, by an attachment in equity of some specific property, without asking for a discovery under the bill. *Chapman* v. *Publishers' Co.* 128 Mass. 478; *Insurance Co.* v. *Abbott,* 127 Mass. 558; *Donnell* v. *Railroad,* 73 Maine, 567. This is a materially different bill, but one common to the practice of courts of chancery.

It is not an answer to this mode of remedy that another remedy exists by means of the process of foreign attachment either of legal or equitable assets. Those remedies are partial and limited, while this is much more adequate and complete. Besides, the present form of proceeding, although always existing in modern equity procedure, is expressly allowed by the statutes of our state. R. S., ch. 46, § 52. Either remedy does not exclude the other.

The first objection urged by the respondents against the bill, is a want of jurisdiction in the court to act, because the bill contains no allegation that an execution was taken out upon any judgment and *nulla bona* returned thereon. This defense must prevail, and for the reason stated by SHEPLEY, J., in *Webster* v. *Clark,* 25 Maine, 313, who says, " courts of equity are not tribunals for the collection of debts; and yet they afford their aid to enable creditors to obtain payment, when their legal remedies have proved to be inadequate. It is only by the exhibition of such facts, as show, that these have been exhausted, that their jurisdiction attaches. Hence it is, that when an attempt is made by a process in equity to reach equitable interests, choses in action, or the avails of property fraudulently

conveyed, the bill should state, that judgment has been obtained, and that execution has been issued, and that it has been returned by an officer without satisfaction." Such has certainly become the settled rule in this state. It has been unhesitatingly affirmed in a series of cases. *Hartshorn* v. *Eames*, 31 Maine, 93; *Dana* v. *Haskell*, 41 Maine, 25; *Dockray* v. *Mason*, 48 Maine, 178; *Corey* v. *Greene*, 51 Maine, 115; *Griffin* v. *Nitcher*, 57 Maine, 270; *Howe* v. *Whitney*, 66 Maine, 17.

Our decisions do not stand alone upon the question. The decided preponderance of authority is the same way. Mr. Bump, in his work on Fraudulent Conveyances, at page 514, gleans the rule from all the cases of the country, and states it in these explicit terms: "The creditor's right to relief in such case depends upon the fact of his having exhausted his legal remedies without being able to obtain satisfaction. The *best* and the *only* evidence of this is the actual return of an execution unsatisfied. The creditor must obtain judgment, issue an execution, and procure a return of *nulla bona*, before he can file a bill in equity to obtain satisfaction out of the property of the debtor which cannot be reached at law." In Pom, Eq. Jur. § 1415, it is said, " The general rule is, that a judgment must be obtained, and certain steps taken towards enforcing or perfecting such judgment, before a party is entitled to institute a suit of this character. In this there is an uniformity of opinion, but the difficulty arises in determining exactly how far a plaintiff should proceed after he has obtained his judgment." In a note, the author explains: " Much of the conflict doubtless results from the effect judgments and writs of execution have in different states. The rule seems to be sustained by the weight of authority that before a creditor's suit can be brought to reach choses in action and *personal* property in such a shape or form or under such conditions that no levy can be made at law, execution must have been issued and a return of *nulla bona* made." The cases show that, in those states where a judgment is itself a lien upon land, an execution need not issue. In such case equity will proceed to make the lien effectual. Among the cases sustaining the rule as promulgated in our own state, are the following: *Tappan* v.

*Evans*, 11 N. H. 311; *Smith* v. *Millett*, 12 R. I. 59; *Adee* v. *Bigler*, 81 N. Y. 349; *Adsit* v. *Butler*, 87 N. Y. 585. See also, *Idem*, 637; *Suydam* v. *Insurance Co.* 51 Pa. St. 394; *Dormueil* v. *Ward*, 108 Ill. 216; *Brown* v. *Bank*, 31 Miss. 454; *Scott* v. *Ware*, 64 Ala. 174.

The rule has been sustained by the Federal Supreme Court in several cases, and in too strong terms to suppose that it can be considered as reversed by that court by the observations of Mr. Justice STRONG, in relation to it, in the case of *Case* v. *Beauregard*, 101 U. S. p. 688, a case cited for the complainant. See *Jones* v. *Green*, 1 Wall. 330; *Taylor* v. *Bowker*, 111 U. S. 110.

We think that, outside of the authorities, the rule is a reasonable one. It should not be in the power of a creditor to institute such an extraordinary remedy against his debtor, for no other reason than that his debt is overdue. A debtor may be able to relieve himself from threatening insolvency by the time an execution is obtained and demanded of him. His inability or unwillingness to pay should be established by some certain rule. What more reasonable one could be devised than that there shall be a judgment, an execution, and a return of *nulla bona*? And to remove all uncertainty the official return is conclusive evidence that the creditor has exhausted all legal remedy without succeeding in collecting his debt. It is a beneficent rule for both parties.

The counsel for complainant contends that the demurrer admits the insolvency, and that the admission obviates the necessity of a return of *nulla bona*. The official return being the only sufficient evidence that the debt can not be legally collected, the demurrer is not a waiver of a right to ask for a production of such evidence. It complains of the insufficiency of the bill, because it does not allege that such evidence exists.

It is contended for the complainant that the rule held to in the cases in this state, before cited, was adopted when we had quite limited powers of chancery, and that with our equitable jurisdiction enlarged, as it now is, the rule should be different. No such excuse was ever given for the rule in its early days. No

chancery jurisdiction, however enlarged, takes upon itself the collection of legal debts before legal remedies are exhausted.

Nor is there force, to our minds, in the distinction seen by counsel, that in our own cases, referred to before, the bill complained against the principal debtor together with some third party, while the present bill complains against the debtor only. The distinction does not appear to have been before taken. Many of the cases, where a return of *nulla bona* was required, were against debtors alone, and one of the New York cases, before cited, involved the insolvency of a corporation very much as this case does. There is more reason for an application of the rule to the debtor than to parties associated in a bill with him. It is especially for his protection that the rule exists. It is his business that the creditor's bill usually winds up. The forms of creditors' bills in the books are of both descriptions, and the rule is the same.

It does not vary the case, that the statute allows the remedy pursued in this case, to a "judgment creditor." See R. S., c. 46, § 52. It means a judgment creditor who has first exhausted all legal remedy. The original act of 1848, from which the present provision came by revision, but not by legislative alteration, virtually so declared. (See ch. 64, Laws of 1848.) What was at first expressed is now implied. The change in words was to condense the enactment into a more concise expression. There has been no attempt to change the policy of the law, so long understood and adhered to. This view of our statutory provision was taken in the case of *Taylor* v. *Bowker*, 111 U. S. 110.

No doubt, there may be exceptions to the rule requiring a return of *nulla bona*. Where the common law means can not for exceptional causes be made to apply, there are cases which decide that equity may do what the law would do if it could apply. *Wiggin* v. *Heywood*, 118 Mass. 514; *Merchants' Bank* v. *Paine*, 13 R. I. 592. But we have no opinion to express upon any exceptional and hypothetical case at this time. Here there were judgments for many years existing, and no excuse is suggested or appears why further steps were not taken to enforce them.

Another question is whether the statute of limitations applies. This defense may be taken on demurrer where the bill on its face shows its application. *Mooers* v. *Railroad*, 58 Maine, 279; Story, Eq. Pl. § § 484, 751.

Although the doctrine of equitable limitations lacks somewhat in definiteness, adapting itself, as it does, a good deal to circumstances, still it is well settled, that upon legal titles and legal demands, courts of equity adopt and apply statutes of limitations, acting upon them by analogy to the law. This rule applies to most questions in equity. It does not generally apply in cases of express trust. It may, however, apply in cases arising out of express trusts, where the trust has been repudiated by the trustee, and he assumes a position of hostility to it. Besides applying the legal doctrine of limitations, equity has a favorite doctrine of its own which allows a defense to be based on a mere lapse of time and the staleness of a claim, denominated laches, if the delay has been of a passive character, and acquiescence under other circumstances. The defence of laches or acquiescence, is independent of the statutory rules of limitation, and where no statute directly governs the case, may be founded on a delay, either longer or shorter than the statutory period. And so the defendants in the present case set up both the legal and the equitable defense. Story, Eq. Jur. § 1520, *et seq.*

Before making an application of these principles to the case at bar, it is necessary to know just what facts are alleged. Opposite counsel widely differ as to the meaning of the bill. The bill seems to be in some respects uncertain and contradictory.

The complainant's counsel insists that the bill makes the officers of the company official and not individual defendants, and that it is really a proceeding against the corporation only. There could be such a bill, that is, one against the corporation only, making the officers of the corporation parties, only for the purpose of obtaining from them a discovery. Such a practice, although anomalous and never much encouraged, grew up at an early period when a person interested in a cause was incompetent to testify. Story, Eq. Jur. § 1501; Story, Eq. Pl. § 235; 1 Dan. Ch. 179. But relief should not be prayed for in the bill,

and, if it is, demurrer lies. Not general demurrer, however. The defendant should answer as to the discovery, and demur as to the relief. But after a general demurrer is overruled, the defendant may demur *ore tenus* to the prayer for relief; as there is no other way of properly removing the inconsistency from the bill. *Many* v. *Beekman Iron Co.* 9 Paige, 188; *Wright* v. *Dame*, 1 Met. 237. But we do not see how it is possible to avoid the conclusion that the officers are made personal parties to this bill. They are charged with malversation in the company's affairs, and the bill asks for special relief against them for money and property alleged to be in their hands.

If it were a bill against the company only, charging that the company now has assets in its hands, or, what would be the same thing, assets held by agents for the company, it is evident enough that the statute would not be a bar. The complainant has debts and is entitled to collect them if the company has property. And a lien established upon any property of the company, attaches to the property, although in its agents' and servants' hands, if held by them for the company.

But it is altogether another and different thing to charge that the company did have funds or assets some ten to fifteen years ago, which at that time were wrongfully converted by its agents to their own use. A bill against the company for such acts of its officers would be valueless to creditors, unless the officers are made personally and individually parties thereto. A judgment against the company would not be a judgment against them. It is not an *in rem* judgment that is obtainable. And here again we are at a loss to know exactly what the bill means. It alleges fraud, but does not recite whether it was practiced by the officers upon the company or creditors. It alleges conversion, but does not intimate whether assented to by the company or not. The complainant does not narrate his grievance frankly. There is a hidden meaning.

If it is sought to reach funds which the officers of the company actually received from or for the company and converted to their own use in 1871, we think the complainant's claim against the officers is barred by the statute of limitations, and also by

his laches; or, if it is possible that the statute would not begin to run until a return of *nulla bona*, then by his laches in the long delay before obtaining a return of *nulla bona* and prosecuting this suit. The bill was commenced in 1881. All of the judgments produced were recovered as early as 1866, except one recovered in 1879, and that was merely the renewal of another judgment recovered in 1867, a fact upon our own records of which we can take judicial notice. Of course, there may be causes or excuses preventing the operation of the statute. None are suggested or appear here.

There is no doubt that the property of a corporation is a trust fund pledged to the payment of its debts, and that directors hold the same under an implied or constructive trust for the benefit of creditors. It is not an express trust; not a purely equitable trust; not such a trust as exists between the directors and the company, (and even that relation is perhaps not a trust in a strict technical sense) it is a trust *sub modo* — in some respects analogous to a trust — something which the law for equitable purposes construes to be a trust. It is a charge *on* property rather than any right or interest *in* it. There is no contract obligation, no direct privity, between stockholders and the creditors of a company. See Perry, Trusts (3rd ed.), § 166. It is an equitable lien to aid in the enforcement of a legal right; to aid in collecting a debt. Story says: (Eq. Jur. § 1252) "Perhaps, to this same head of implied trusts upon presumed intention, although it might well be deemed to fall under the head of constructive trusts by operation of law, we may refer that class of cases, where the stock and other property of private corporations is deemed a trust fund for the payment of the debts of the corporation." Mr. Thompson, a writer on the liability of directors of corporations, says: "The directors of a corporation are not trustees for its creditors in the same sense in which an agent is the trustee of his principal. In this sense they are the trustees of the shareholders, who have elected them to act as such, and not trustees of strangers to the shareholders." 6 Sou. Law Rev. (N. S.) 403. In *Poole's case*, 9 Ch. Div. 322, Jessel, M. R. says the same thing. In Pom. Eq. Jur. § 1047, the directors'

liability to creditors of the company is classified with constructive trusts, although the author doubts the propriety of calling it as much of a trust as even that. Pom. Eq. Jur. § 1044, *et seq*.

Constructive trusts, and all trusts, save purely equitable or express trusts, are in equity subject to the statute of limitations. Wood, Limitations, § 58, and cases in note. It is there said: " With respect to the operation of the statute of limitations upon cases of trusts in equity, the distinction is, if the trust be constituted by act of the parties, the possession of the trustee is the possession of the *cestui qui trust*, and no length of such possession will bar; but if a party is to be constituted a trustee by the decree of a court of equity, founded on fraud, or the like, his possession is adverse, and the statute of limitations will run from the time that the circumstances of the fraud were discovered." Again, the author (§ 215) expresses the same proposition in these other words : " One who is not actually a trustee, but upon whom that character is forced by a court of equity, only for the purpose of a remedy, may avail himself of the statute." The doctrine could not be more satisfactorily stated. The authorities support this principle with great unanimity. A few only need be cited, those more especially of the class of constructive trust cases to which the present case belongs. *Baker* v. *Bank*, 9 Met. 182 ; *Peabody* v. *Flint*, 6 Allen, 52 ; *Farnam* v. *Brooks*, 9 Pick. 212 ; *Kane* v. *Bloodgood*, 7 John. Ch. 90 ; *Stringer's case*, 4 Ch. App. 475 ; *In re Alexandra Palace Co*. 21 Ch. Div. 149 ; *Carrol* v. *Green*, 92 U. S. 509.

It is not inferable from the bill that the acts of the directors in 1871 were of a character such as to constitute a breach of trust, existing between them and the company, which would not be barred by the statute. But if it were so, it is not perceived that it would make the creditors' claim better. The acts might be without the statute as to the company, and within it as to creditors. The right of the one is distinct from the right of the other and independent of it. Directors may be liable to creditors without any liability to the company or its stockholders. We do not see how the creditors' claim is enlarged or lessened

by any claim of the company against the stockholders. They are not the same. Shel. Subrogation, and cases. *Smith* v. *Hurd*, 12 Met. 371; *Hersey* v. *Veazie*, 24 Maine, 9; *Smith* v. *Poor*, 40 Maine, 415. It may be otherwise, under the English statutes providing for winding up the business of public companies, under which the liquidator represents shareholders and creditors alike. *In re National Funds Assurance Co.* 10 Ch. Div. 118; *Flitcroft's case*, 21 Ch. Div. 519. But under our practice the remedy is nothing more than an assistant and collateral proceeding in equity employed by a creditor to collect a legal debt.

Although there is serious question as to the meaning of the bill so far as bearing upon the question of laches or limitation, there can be no doubt upon the first point discussed by us, and therefore the conclusion must be,

*Demurrer sustained.*

WALTON, LIBBEY, EMERY, FOSTER and HASKELL, JJ., concurred.