# CASES DETERMINED

# January Term, 1903.

---

Boyd, Receiver, and others, Appellants, vs. Mutual Fire: Association of Eau Claire and others, Respondents.

| | |
|---|---|
| 116 | 155 |
| s116 | 177 |
| 116 | 326 |

*November 6, 1901—June 19, 1902.*
*October 24, 1902—January 13, 1903.*

| | |
|---|---|
| 116 | 155 |
| 117 | 5440 |
| 117 | 5444 |

*Corporations: Insolvency: Receivers: Winding-up suit: Mutual fire insurance corporations: Policy holders: Parties: Limitation of actions: Officers and directors of corporations: "Trustees of an express trust": Misfeasance: Malfeasance: Cause of action: Action at law or in equity: Pleadings: Amendment: New cause of action: Demurrer: Joinder of causes of action.*

1. In an action to wind up the affairs of an insolvent corporation, the amended complaint alleged that certain pretended creditors, who were also its stockholders and directors, for the purpose of saving themselves harmless from liability, brought a friendly action to have the corporation adjudged insolvent, for winding up its affairs, and had a receiver appointed therein; that subsequently such receiver was removed and another appointed in his place, who, with certain other creditors, reorganized the action and made the original plaintiffs and the first receiver parties defendant. The amended complaint alleged collusion between the original plaintiffs and the first receiver, and demanded judgment for both specific and general relief against all the defendants. *Held*, that the action was a creditor's suit brought in equity, under secs. 3216–3228, Stats. 1898, providing for the winding up the affairs of insolvent corporations.

2. In an action to wind up the affairs of an insolvent mutual fire insurance association, a member thereof must be regarded in a similar position to a stockholder of an insolvent corporation, and, the association having been adjudged insolvent and a receiver appointed pursuant to secs. 3216–3228, Stats. 1898, the

right to enforce any liability against such member thereupon accrues.

3. An action to wind up the affairs of a mutual fire insurance company was commenced November 15, 1890, the corporation then adjudged insolvent, and a receiver appointed. On May 8, 1900, the action was reorganized and certain policy holders, not theretofore parties, were made defendants. *Held*, that the statute of limitations began to run in favor of such policy holders November 15, 1890, and, until they were so made parties, and the summons issued against them, the statute did not stop running in their favor.

4. Where insolvency of a mutual fire insurance company occurs during the life of a member's insurance therein, the action of the court under secs. 3216–3228, Stats. 1898, in adjudging such insolvency, granting an injunction and appointing a receiver, operates to cancel his policy in such company, and the statute of limitations begins to run from that date.

5. Subd. 5, sec. 2081, Stats. 1898, provides that express trusts may be created for the beneficial interests of any person when such trust is fully expressed and clearly defined upon the face of the instrument creating it. *Held*, that the officers and directors of a corporation are not trustees of an express trust within the calls of said statute, although a trust is necessarily "fully expressed and clearly defined" in the articles of incorporation.

6. So long as a corporation is a going concern neither it, nor its governing body, holds the corporate property in trust for its creditors.

7. The officers and directors of a corporation occupy a fiduciary relation, demanding care, vigilance, and good faith, and, if they are guilty of misfeasance or malfeasance, the corporation may at once bring an action at law to enforce any such violations of duty.

8. In such case, if the corporation refuses to act, its stockholders before insolvency, and its creditors after insolvency, may enforce such liability in the right of the corporation, and the fact that the creditor must sue in equity does not alter the running of the statute of limitations, since the application of the statute of limitations in equity is determined by the cause of action stated, rather than by the nature of the relief demanded.

9. A cause of action for misfeasance or malfeasance against officers or directors of a corporation is one in the right of the corporation, and, when brought by creditors after the insolvency of the corporation, is subject to such objections as the recalcitrant officers might have urged had the corporation brought the suit, including the plea of the statute of limitations; sec. 4206, Stats. 1898 (providing that civil actions can only be com-

Boyd v. Mutual Fire Asso. 116 Wis. 155.

menced within the periods prescribed by statute), being general and comprehensive, and in itself making no exceptions as against trustees of any kind.

10. Certain alleged creditors of a corporation, some of whom were officers and directors therein, brought an action to have it adjudged insolvent, for a winding up of its affairs, and procured the appointment of a receiver of the corporation therein. Subsequently such receiver was removed, and another appointed, who, with certain other creditors, reorganized the action and made the first receiver and said plaintiffs defendants. The amended complaint alleged collusion between the original plaintiffs and many acts of misfeasance and malfeasance on the part of such officers and directors. The action was reorganized more than ten years after it was commenced. No cause of action for maladministration was incorporated into the complaint until the reorganization of the action. *Held*, that no action to enforce the alleged liability of such officers and directors was commenced against them until such amended complaint was served.

11. Where a new cause of action is introduced as an amendment to a pleading, the statute of limitations runs thereon until the making of the amendment.

12. A joint demurrer to a complaint for insufficiency on behalf of several defendants is bad if the complaint states a cause of action against any one of them.

13. In an action by creditors and the receiver of an insolvent corporation against stockholders, officers and directors, and a former receiver thereof, allegations that the former receiver collected various sums of money belonging to the corporation, both before and after his appointment, which he converted to his own use, and also gross mismanagement as receiver, states a cause of action against him in favor of the plaintiff receiver, but not in favor of the creditors of the corporation.

14. Where each of several demurrers to a complaint is based on an alleged misjoinder of several causes of action, and the complaint fails to state facts sufficient to constitute a cause of action as to one, such cause of action will not be considered in determining the alleged misjoinder.

15. A complaint by certain creditors and the receiver of a corporation against a former receiver and directors and stockholders, stating an independent cause of action against such former receiver in favor of the new receiver, and also stating a cause of action in favor of the creditors against the directors and certain shareholders, is held bad for misjoinder of causes of action.
CASSODAY, C. J., dissents.

APPEALS from orders of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge.  Appeal from one order *dismissed;* appeal from other order *affirmed.*

This action was commenced November 13, 1890, by the defendants *John S. Owen* and the *Northwestern Lumber Company,* as creditors, in their own behalf, and as representing all others similarly situated, against the *Mutual Fire Association of Eau Claire,* to have it adjudged insolvent, and to wind up its affairs.  On the same day the association put in a verified answer, admitting the essential facts, and November 15, 1890, the defendant *James A. Smith* was appointed receiver of the corporation, and on the same day qualified as such.  June 30, 1899, *Smith* was removed, and the plaintiff *Boyd* was duly appointed receiver in his place. Upon the petition of *Boyd,* as such receiver, and some of the creditors, who are now plaintiffs, the action was reorganized May 8, 1900, by making those who were then plaintiffs defendants with the association, and by bringing in all the additional persons now named as defendants herein, and making such petitioners, who were and are creditors of the corporation, plaintiffs herein.  Such new plaintiffs were thereupon ordered by the court to prosecute the action for the benefit of all the creditors of the corporation.  Accordingly, such new plaintiffs and *Boyd,* as receiver, filed and served an amended complaint.  To such amended complaint thirteen demurrers were interposed; three of them by a single defendant, and the other ten by two or more defendants, as they deemed their interests to be similar.  Each of the thirteen demurrers were upon the same grounds, to wit:

"First, that it appears upon the face of said complaint that said complaint does not state facts sufficient to constitute a cause of action as against them or either of them; second, for that it appears upon the face of said complaint that several causes of action have been improperly united; third, that it appears upon the face of said complaint that the action was not commenced within the time limited by law, and

was not commenced within the time limited by secs. 4219, 4221, 4222, 4224, 4227, and 4252 of the Revised Statutes of Wisconsin for the year 1878, and of the Revised Statutes of Wisconsin for the year 1898, reference to which sections is hereby made."

A fourth ground is mentioned, but, as it is expressly waived by counsel for defendants, it is unnecessary to state it. This is an appeal from an order sustaining each of such thirteen demurrers, or rather thirteen orders, embodied in one paper, each sustaining some particular one of such demurrers; and also from an order refusing to state the particular ground upon which such demurrers were sustained.

Omitting formal matters, the substance of the amended complaint, so far as necessary to an understanding of the questions presented for decision on this appeal, is, in addition to the facts stated, to the effect that the *Mutual Fire Association* was incorporated September 1, 1885, under ch. 89, R. S. 1878, and did business as an insurance company from that time till it was adjudged insolvent, as hereafter stated. The articles of incorporation contained the following:

"All persons holding contracts of insurance with this corporation, and the heirs, executors, administrators, successors or assigns of such persons continuing to be so insured shall thereby become members of this corporation, and shall continue to be such members during the continuance of such respective contracts of insurance, and no longer."

As soon as the corporation was organized, its directors and officers, all of whom are named as defendants herein, agreed to disregard the statutes of this state as to the manner such corporation should do business, and to pursue a plan of their own, one feature of which was that no assessment should be made upon any member of the corporation to meet any of its liabilities, whereas the statute requires such assessments to be made. That plan was followed till the corporation was declared insolvent. Another feature of the agreement, made as aforesaid, and which was carried out, was that two kinds of

policies should be issued,—one called "cash policies," covering periods of one year or less, each policy being issued for a single cash premium paid down; the other kind being those issued for three or five years, the policy holder in each case giving a premium note payable in instalments as needed and called for by corporate authority to pay losses and expenses of the company. From the beginning to the end all the officers and directors of the corporation were interested in property insured by the company, and their aim was to obtain cheap insurance for themselves, regardless of its jeopardizing the ability of the company to furnish safe insurance to outside parties. To that end such officers and directors knowingly charged for carrying risks some thirty per cent. less than they knew would be necessary to do so and pay the expenses of the corporation and claims upon policies as they accrued, the idea of such officers and directors being that by such method their own risks could be carried for a few years at a very low rate, and the corporation then be allowed to go into insolvency, and the accumulated liabilities, representing losses in the business, be thrown on outside parties, such as plaintiffs.

The scheme worked successfully for about two years, during which time no assessment was made on members of the corporation to pay losses or expenses, all being paid by using money as fast as collected to pay matured claims. To accomplish that, the sixty days after a proof of loss, allowed by the insurance contract for payment thereof, was taken in all cases. In the fall of 1887, in order to continue business in the manner aforesaid, more than sixty days was taken for the payment of losses suffered by policy holders and duly proved. Before the end of that year it became necessary to either abandon such method, and resort to assessments upon members of the corporation, or obtain money by borrowing, or to cease doing business altogether. That condition was created by disregarding the legal requirement to collect money from

members of the corporation sufficient for a fund to pay losses
as they matured.   The difficulty was tided over temporarily
by the officers and directors, without knowledge of the other
members of the corporation, borrowing large sums of money.
Money was so obtained prior to February 27, 1888, to the
amount of $10,746.76, from eighteen different persons and
corporations, all of whom are named in the complaint, and
the amount borrowed of each stated.   That method was con-
tinued till the new receiver was appointed, as stated; the total
indebtedness incurred in that way being about $26,254. When
it was apparent to the officers and directors of the corpora-
tion that it could not continue doing business much longer,
pursuant to the plan agreed upon, as aforesaid, they planned
to have it wound up by proceedings commenced in an ad-
versary way by creditors, but really upon their own motion,
though to delay matters as long as possible to enable them to
gather in as much money as possible, and apply the same in
payment of the borrowed money in preference to the claims
of policy holders.   A part of the plan from first to last of
doing the corporate business was not to keep books, so the real
situation could not be readily discovered, and such plan was
effectually executed.   For that reason all the details of the
borrowing operations resorted to as aforesaid cannot be stated.
But the indebtedness of the corporation created by such oper-
ations steadily increased from the time that method of obtain-
ing money was resorted to till the corporation was declared
insolvent, notwithstanding the officers and directors well
knew that the collapse thereof was only a question of a short
time.

In order to obtain new members of the corporation and re-
tain old ones, false representations of its condition were made,
by which means plaintiffs and others were so deluded.  Such
false representations consisted, in the main, of the following:
Money was given to persons who had paid the same into the

corporation on premium notes, ostensibly as a legitimate division of a surplus over and above what was necessary to satisfy its needs for expenses and the payment of losses to policy holders. Policies were canceled, and money returned to the holders thereof as return premiums, when it was required to pay the *pro rata* share of such policy holders necessary to meet its then existing liabilities. In February, 1887, on false representations made by the officers and directors, a certificate was obtained of the commissioner of insurance of the state of Wisconsin to the effect that the corporation had available assets in cash and premium notes to meet future losses to the amount of $90,021.66, and the certificate was made public. Statements were made, ostensibly in compliance with sec. 1941*d,* R. S. 1878, in which the assets of the corporation were overstated from forty to two hundred per cent., and its liabilities understated from five to seventy per cent., the degree of falsity being least at the start and increasing from year to year up to the time of the final collapse of the company. In the reports so made no mention was made of the indebtedness of the corporation for borrowed money, though a true statement in that regard was required by law as a part of such reports; and, notwithstanding the fact that when such reports were made indebtedness of the corporation for borrowed money existed as before stated. Copies of such reports were made public. All the officers and directors of the corporation from first to last were parties to the acts of misfeasance and malfeasance aforesaid, and to other acts by which its indebtedness was increased and assets lost to the injury of the corporation and its creditors as follows: A large number of policies were issued on property and to persons outside the state where it had no lawful right to go, by which premium notes were taken aggregating $85,000, which were worthless.

Between January 5, 1889, and November 15, 1890, the officers and directors took from the corporate treasury

$26,078.20, and appropriated it to their own use by apply-
ing the same in payment of their own debts. A detailed state-
ment of the transactions in that regard is set forth in the
complaint. Defendant *Smith,* while he was secretary and
manager of the corporation, and under contract to turn into
the corporate treasury the fees obtained by him as an insur-
ance broker for procuring insurance in other companies, re-
ceived for such fees $500, and converted the same to his own
use. The officers and directors of the corporation, during the
year 1890, misappropriated its funds to a large extent. A de-
tailed statement of their doings in that regard was made a
part of the complaint, showing that among the sums so squan-
dered was $281.73 which was paid to defendant *Smith* with-
out consideration, and which he retained. The persons com-
posing each board of directors and each executive committee
of the corporation from the time of its organization to the
time it was adjudged insolvent were named in the complaint,
the last board of directors being composed of the following
named persons: R. L. McCormick, *John S. Owen,* W. A.
Rust, D. R. Moon, A. M. Bailey, J. T. Barber, H. E. Knapp,
and W. J. Starr; and the last executive committee was com-
posed of George B. Shaw, *John S. Owen,* J. T. Barber, D. R.
Moon, and A. M. Bailey. By November 13, 1890, the officers
and directors, with H. H. Hayden, finally perfected arrange-
ments to cause the corporation to be wound up, a part of the
plan being that a friendly receiver should be secured; that
the secretary and manager of the corporation, the defendant
*Smith,* should be suggested to the court, and his appointment
secured; and that he, after coming into possession of the prop-
erty of the corporation as receiver, while ostensibly perform-
ing his official duties, should use his position so as to save
harmless the participants in such scheme from liabilities
which they had incurred by reason of the manner in which the
business of the corporation had been conducted as aforesaid.
The agreement so made was fully carried out, so far as the

participants in the scheme could bring the same about by means of the action. Pleadings were made up in the action in form as if the proceedings were of an adversary character. The proceedings upon both sides were directed by the same hand, and in the interests of the participants in the aforesaid plan.

The corporation was in due form adjudged insolvent, and *Smith* was appointed receiver, November 15, 1890, and he duly qualified and took possession of the assets of the corporation. Thereafter he administered such assets until he was removed, ostensibly in a legitimate manner, but in fact in furtherance of the plan pursuant to which his appointment was secured. By reason of his misconduct expenses to the extent of $1,500 were incurred necessarily in efforts to remove him and to undo the wrongs done by him to the creditors. The amount which will ultimately be realized from the assets of the corporation will be less by $20,000 than it would have been had *Smith* faithfully performed his duties; that loss being largely due to the fact that in the meantime many members of the corporation have died, others have removed from the state, and others have become insolvent. During the progress of the action the receivers have obtained from the assets of the corporation $8,711.78. The sum of $65,000 more will be required to pay all the liabilities of the corporation established in the action.

During *Smith's* administration an assessment was duly made by the court in April, 1894, and confirmed July 13, 1896. After the liabilities of the persons so assessed became fixed by the order of the court, a demand was made upon each such person for payment of the amount for which such person was liable, but no part of the liability was discharged. Such a demand was made by the first receiver, and was repeated by the second receiver. November 13, 1899, by order of the court, an assessment of one hundred per cent. was made on so much of the premium notes in the hands of the receiver

as remained uncollected, and the same amount on the premium notes wrongfully released after the debtors were liable to assessment to the extent thereof to pay the debts of the corporation; also on cash premiums and money repaid by the corporation to the policy holders as unearned premiums after the same were applicable to the payment of the debts of the corporation. January 8, 1900, on demand and notice to all persons interested, such assessment was confirmed by the court, and the receiver directed to collect the same. Notice of such assessment and of the time limited for payment thereof was given to each person liable. More than thirty days elapsed thereafter without any payment of such assessments before the persons liable were brought into this action as defendants. All were so brought in. All the persons named in a tabulated statement, made a part of the complaint, were policy holders of the corporation, having taken out one or more policies, and are liable to contribute a proportionate share of the money necessary to pay the liabilities of the corporation to the extent of the amounts assessed against them respectively. The statement shows the names of those who gave premium notes for policies, except such as have paid the receiver in full, or settled with him by order of the court; the names of all members except as aforesaid, who took out insurance, and were assessed for any reason, and are made defendants herein, being so designated as to be readily identified, members who became such as partners being designated by their firm name under an appropriate heading; the place of residence of each policy holder while he was a member of the corporation; the number of each policy and note assessed; the kind of policy issued to each policy holder, whether cash or on the mutual plan, as to each policy holder; the period for which each policy ran; the date of the contemplated cancellation or surrender as to each policy so dealt with; the date of each note and policy; the amount each note was given for; the cash premiums paid for short policies; the amount of each

of the assessments referred to as to each person affected thereby remaining unpaid, except interest from the time payment should have been made; the amount wrongfully paid to members, specifying as to each person so affected the amount received and claimed by him on the pretense that the corporation had earned enough and was competent to pay a dividend; the dates when dividends were paid; the total indebtedness as to each member, showing the policy or policies to which the indebtedness relates, interest only to be added from the time such indebtedness should have been paid. Notwithstanding the pretended cancellation of policies as above mentioned, the policies which the officers and directors attempted to terminate, and upon which money was paid back ostensibly as unearned premiums, continued as binding contracts, preserving the memberships of the holders thereof, and their liability to assessment for payment of all the debts of the association which existed or were contracted during the period of such membership; the fact being that the indebtedness of the association was so great at the times of such attempted cancellations that the entire amount of the premium notes was required to pay the same, in order that each member should bear his proportionate part thereof. The complaint closed with a prayer for judgment for $65,000, and for such relief against each and all of the defendants as the court should deem just and equitable.

*L. A. Doolittle* and *A. J. Sutherland,* for the appellants.

For the respondents there was a brief by *Frawley, Bundy & Wilcox,* and a separate brief signed also by *Wickham & Farr,* of counsel; and oral argument by *C. F. Bundy* and *T. F. Frawley.*

The following opinion was filed June 19, 1902:

Cassoday, C. J. The numerous claims made against the very numerous defendants, the variety of questions involved, and the mixed condition of the things alleged, have called for

and received the very careful consideration of all the members of the court. For the delay in deciding the case the writer assumes the responsibility. Counsel for the plaintiffs have, in their brief, classified the thirteen demurrers according to the nature of the claims made against the respective demurrants, and numbered them from one to thirteen, consecutively, as they appear in the record. Counsel for the defendants have acquiesced in such classification, and given their views in respect to the same. For convenience, and to avoid confusion, we shall keep in view such classification, but not in the order stated by counsel. The most important question presented is whether the amended complaint states a cause of action, not barred by the statute of limitations, against any of the defendants.

1. Six of the demurrers call upon us to answer the question as to whether such amended complaint states such cause of action against the parties named as demurrants who at one time held policies in the corporation. Under the repeated and recent adjudications of this court there can be no question but that this must be regarded as a creditors' suit, brought in equity, under the statutes, to wind up the affairs of an insolvent corporation. Secs. 3216–3228, Stats. 1898. Such being the nature of the action, all the rights and liabilities of creditors, officers, stockholders, and members were to be worked out in this suit. *Gager v. Bank,* 101 Wis. 593, 77 N. W. 920; *Gager v. Marsden,* 101 Wis. 598, 77 N. W. 922; *Foster v. Posson,* 105 Wis. 99, 81 N. W. 123; *Finney v. Guy,* 106 Wis. 256, 82 N. W. 595; *Killen v. Barnes,* 106 Wis. 546, 82 N. W. 536; *Gores v. Field,* 109 Wis. 408, 84 N. W. 867, 85 N. W. 411; *Gager v. Paul,* 111 Wis. 638, 87 N. W. 875. Under such statutes the corporation was adjudged insolvent, and a receiver was appointed November 15, 1890. The statute provides:

"Whenever any corporation . . . authorized by law to make insurance shall become insolvent or unable to pay its

debts or shall neglect or refuse to pay its notes or evidence of debts on demand or shall have violated any of the provisions of its act of incorporation or of any other law binding on such corporation, any court having jurisdiction may, by injunction, restrain such corporation and its officers," etc. Sec. 3218.

The statute further provides:

"Such injunction may be issued upon the commencement of an action for the purpose of closing up the business of such corporation . . . by any creditor or stockholder of such corporation, or at any time thereafter upon proof of the facts required to authorize the issuing of the same. The court may in any stage of such action appoint one or more receivers to take charge of the property and effects of such corporation and to collect, sue for and recover the debts and demands that may be due and the property that may belong to such corporation, who shall in all respects possess the powers and authority conferred and be subject to all the obligations imposed upon receivers in other cases, and in all respects be subject to the control of the court." Sec. 3219.

So the statute further provides:

"Whenever any creditor of any corporation shall seek to charge the directors, trustees or other officers or stockholders thereof on account of any liability created by law he may commence and maintain an action for that purpose in the circuit court and may at his election join the corporation in such action." Sec. 3223.

In such an action the statute further provides:

"If the property of such corporation shall be insufficient to discharge its debts the court shall proceed to compel each stockholder to pay in the amount due and remaining unpaid on the shares of stock held by him or so much thereof as shall be necessary to satisfy the debts of the corporation." Sec. 3226.

A member of such mutual insurance corporation must be regarded in a similar position to a stockholder of such association. The corporation having been adjudged insolvent, and a receiver thus appointed, the right to enforce any liabil-

ity against its members thereupon accrued. Such, in effect, is a recent ruling of this court. *Booth v. Dear,* 96 Wis. 516, 519–521, 71 N. W. 816. Thus, in an opinion by Mr. Justice BREWER, in the federal court, it was held:

"Where an insolvent corporation ceases to do business, and assigns all its property, including unpaid stock subscriptions, to trustees for the benefit of its creditors, the liability of its stockholders at once becomes absolute, and the statute of limitations begins to run in their favor, and against such creditors and trustees, immediately." *Glenn v. Dorsheimer* (C. C.) 23 Fed. 695.

If a cause of action accrued against any of such members at that time, then the statute of limitations began to run in favor of such member at that time. Secs. 4219, 4222, Stats. 1898. Thus it is stated by a standard text writer:

"Where the liability of the shareholder is immediate and primary, and not contingent on the obtaining of a judgment against the corporation, it is clear that the statute of limitations begins to run in favor of the shareholder when the debt matures against the corporation." Cook, Stockh. (3d Ed.) p. 301, § 225.

It is held in Ohio:

"Where a company has become insolvent, and made an assignment of all its property for the benefit of its creditors, the right of the creditors, or any of them, then accrues to commence suit against the stockholders on their liability under the statute, without any prior proceeding against the company, and the statute of limitations begins to run from that time against the right of action." *Barrick v. Gifford,* 47 Ohio St. 180, 24 N. E. 259.

To the same effect, *Younglove v. Lime Co.* 49 Ohio St. 663, 33 N. E. 234; *Davidson v. Rankin,* 34 Cal. 503; *Stilphen v. Ware,* 45 Cal. 110; *Bank of San Luis Obispo v. Pacific Coast S. S. Co.* 103 Cal. 594, 596, 37 Pac. 499; *Corning v. McCullough,* 1 N. Y. 47; *Hollingshead v. Woodward,* 107 N. Y. 96, 13 N. E. 621; *Washington Sav. Bank v. Butchers' & Drovers' Bank,* 107 Mo. 133, 17 S. W. 644.

In a Michigan case it is held:

"The statute of limitations begins to run as against such right of action immediately upon the dissolution of the corporation and the appointment of a receiver." *Webber v. Hovey,* 108 Mich. 49, 65 N. W. 619.

Thus it has been held in the supreme court of the United States:

"The statute of limitations is a bar to a suit, brought four years after a bank in South Carolina had permanently suspended specie payments, by a holder of its notes, to enforce the individual liability of the stockholders." *Terry v. Mc-Lure,* 103 U. S. 442.

We must hold that the statute of limitations began to run in favor of the policy holders in question November 15, 1890. All of such policies were issued between October 14, 1885, and August 1, 1890. None of the defendants who joined in the six several demurrers mentioned were made parties to this action until after May 8, 1900. Until they were so made parties, and the summons issued against them, the statute of limitations did not stop running in their favor; and this is so as to each of the six groups of such defendants. This has recently, in effect, been so decided by this court. *Gager v. Paul,* 111 Wis. 638, 647, 648, 87 N. W. 875. It is unnecessary to add anything to what is there said in the opinion of Mr. Justice DODGE.

As indicated in the statement of facts, twenty-five of such policies were issued and paid for at the time of delivery in cash, and continued for one year or less. The others, and by far the greater number, were issued on the mutual plan, and to continue for three or five years, for which premium notes were given, liable to assessments for losses and expenses from time to time as they accrued. This court has held, in effect, that, where insolvency occurs during the defendant's insurance in such mutual fire insurance company, the action of the court, under the statutes cited, in adjudging such insolvency and granting an injunction and appointing a receiver, oper-

ates to cancel such policy and all other existing policies in such company. *Davis v. Shearer,* 90 Wis. 250, 255, 62 N. W. 1050; *Dewey v. Davis,* 82 Wis. 500, 52 N. W. 774. The principle upon which those two cases were decided seems to be applicable here. So there is an additional reason why the statute of limitations began to run against all of such policy holders November 15, 1890; and the right of action was completely barred, as to them, before they were made parties to the action. The nine defendants who joined in demurrer No. 3 at one time held such cash policies which were surrendered before the expiration of the year, and it is here sought to recover from them the unearned premium. We must hold that the complaint fails to state facts sufficient to constitute a cause of action, not barred by the statute of limitations, as against such nine demurrants; and for that reason such demurrer was properly sustained. The same is true with demurrer No. 4, where it is sought to charge the non-resident demurrants with liability on such premium notes given by them for such mutual policies. The same is true with demurrer No. 5, where it is sought to charge a large number of resident demurrants by reason of assessments made upon such premium notes. The same is true with demurrer No. 6, where it is sought to recover from such demurrants unlawful dividends paid to them at various times between 1887 and 1890. The same is true with demurrer No. 11, where it is sought to charge certain resident demurrants by reason of assessments made upon such premium notes, and also to recover back from some of them moneys paid as pretended dividends and unearned premiums. The same is true with demurrer No. 13, where it is sought to charge the demurrant by reason of an assessment upon such premium note for a policy dated December 10, 1888.

2. Five of the demurrers call upon us to determine whether the amended complaint states facts sufficient to constitute a cause of action, not barred by the statute of limitations,

against the officers and directors of the corporation. There can be no question but that the allegations of their misconduct and malfeasance do constitute a cause of action against them. The important question is whether such cause of action is barred by the statute of limitations. Counsel for the plaintiffs claim that the cause of action did not accrue in favor of the creditors who are plaintiffs until they discovered the facts constituting the fraud. Stats. 1898, sec. 4222, subd. 7. To this counsel for the defendants reply that, if there were any facts to prevent the running of the statute, the burden was on the plaintiffs to plead and prove them. *Howell v. Howell,* 15 Wis. 55; *Tucker v. Lovejoy,* 73 Wis. 66, 40 N. W. 627. But there is another view of the question, which seems to be a complete answer to the contention that the statute is a bar to such cause of action. A learned and able text writer states, in effect, that the correct view, as clearly deduced from the mass of decisions on the subject, is that the officers and directors of a corporation are, in equity, trustees of an express trust for the benefit of shareholders and creditors, and hence are within the principle that the statute of limitations does not run in favor of such trustees as against the *cestui que trust.* 3 Thomp. Comm. Law Corp. § 4128. That such officers and directors are such trustees seems to be well established. *Simons v. Vulcan O. & M. Co.* 61 Pa. St. 202; *Pearson v. Concord R. Corp.* 62 N. H. 537; *Sweeney v. Sugar Refining Co.* 30 W. Va. 443, 4 S. E. 431; *Farmers' & Mer. Bank v. Downey,* 53 Cal. 466; *Wickersham v. Critenden,* 93 Cal. 17, 28 Pac. 788; *Bank of Mut. Redemption v. Hill,* 56 Me. 385; *Ellis v. Ward,* 137 Ill. 509, 25 N. E. 530. This court has expressly held:

"The directors and officers of an insolvent corporation are trustees for the creditors, and must manage its property and assets with strict regard to their interests." *Haywood v. Lincoln L. Co.* 64 Wis. 639, 26 N. W. 184.

The trust-fund doctrine, so called, recognized in that case, must be regarded as modified so far as creditors of a going

corporation are concerned. *Ballin v. Merchants Ex. Bank,* 89 Wis. 286, 61 N. W. 1118; *Hinz v. Van Dusen,* 95 Wis. 503, 507–509, 70 N. W. 657; *Slack v. Northwestern Nat. Bank,* 103 Wis. 57, 79 N. W. 51. But there is no doubt but that the managing officers of a corporation are at all times trustees for the corporation and its stockholders, and also for the creditors after the corporation is adjudged insolvent. Id. In fact, our statute on the subject, which is much broader than in some states, provides, among other things, that:

"Express trusts may be created: . . . (5) For the beneficial interests of any person or persons when such trust is fully expressed and clearly defined upon the face of the instrument creating it." Stats. 1898, sec. 2081, subd. 5.

The trust in the case at bar was necessarily and from the very nature of the corporation, "fully expressed and clearly defined" in the articles of incorporation. We must hold that the officers and directors of the association were trustees of an express trust. It follows that the statute of limitations did not run in their favor against the creditors of the corporation. This court has expressly held:

"The statute of limitations has no application in the case of an express trust where there has been no denial or repudiation of the trust." *Bostwick v. Dickson's Estate,* 65 Wis. 593, 26 N. W. 549; *Williams v. Williams,* 82 Wis. 393, 399, 52 N. W. 429; *Fawcett v. Fawcett,* 85 Wis. 332, 55 N. W. 405; *Taylor v. Hill,* 86 Wis. 99, 106, 56 N. W. 738.

Counsel for the defendants cite a large number of cases said to be to the contrary, but, so far as we have examined them, they are in actions by the corporation, or its receiver, or are otherwise inapplicable or distinguishable. We must hold that the statute of limitations did not run in favor of any of such officers or directors. The result is that the amended complaint states a good cause of action against the two defendants who joined in demurrer No. 1, since both were directors and one was treasurer. The same is true as to the defendants who joined in demurrer No. 7, including the ex-

ecutors of the will of D. R. Moon, deceased; and also the defendants who joined in demurrer No. 8, including the administrators of the estate of George B. Shaw, deceased; and also the defendants who joined in demurrer No. 10; and also the defendants who joined in demurrer No. 12, including the executors of the will of Ralph E. Rust, deceased,—since in each case such defendants were sought to be charged as officers and directors, or simply as directors, or as the representatives of such officers and directors. We perceive no good reason why such executors and administrators stand in any different position as to the statute of limitations pleaded than the deceased officers whom they represent. True, the defendants who joined in each of the two demurrers last named were only directors from October 15, 1885, to January 13, 1886, but they were liable for whatever malfeasance they were guilty of while in office, notwithstanding they had ceased to be directors before the commencement of the action. 1 Mor. Priv. Corp. § 563. The mere fact that the amended complaint seeks to charge the two defendants who joined in demurrer No. 1 as members of the corporation, upon which claims the statute of limitations had run, does not prevent their being held liable as directors.

"A demurrer to the entire complaint is properly overruled where it is not good as to one of the causes of action stated." *Pinkum v. City of Eau Claire,* 81 Wis. 301, 51 N. W. 550.

So it is held:

"Where a complaint states a good cause of action as to certain failures of duty on the part of defendant, a general demurrer thereto will not be sustained merely because it attempts, but fails, to state other failures of duty." *Drefahl v. Connell,* 85 Wis. 109, 55 N. W. 160.

Each of the five demurrers last mentioned is based upon another ground, which will hereinafter be considered, and may be sustained.

3. A large number of the members of the corporation, including the *Northwestern Lumber Company,* joined in de-

murrer No. 2. The *Northwestern Lumber Company* was one of the plaintiffs which commenced the action November 13, 1890; and May 8, 1900, by order of the court, it was made defendant instead of plaintiff. Manifestly, the statute of limitations did not run in favor of that company, since it has been a party to the action ever since the suit was first commenced,—more than eleven years ago. This being so, the amended complaint stated a good cause of action against that company. Thus it appears that one of the demurrants against whom a good cause of action is stated is joined with a large number of members of the corporation in whose favor the statute of limitations had run. This court has repeatedly held:

"A joint general demurrer to a complaint for insufficiency on behalf of several defendants is bad if the complaint states a cause of action against any one of them." *Mark Paine Lumber Co. v. Douglas County Imp. Co.* 94 Wis. 322, 325, 68 N. W. 1013, and cases there cited.

The result is that we must hold that the amended complaint states a cause of action against the defendants who joined in demurrer No. 2. But that demurrer is based upon another ground, which will hereinafter be considered, and may be sustained. It will be observed that each and every of the twelve causes of action mentioned was in favor of the creditors of the corporation.

4. The remaining demurrer, No. 9, is interposed by *James A. Smith,* who was appointed receiver November 15, 1890, but who was never an officer or director of the corporation. The amended complaint seeks to charge him with having, prior to May 15, 1891, and while he was such receiver, wrongfully converted to his own use $500 belonging to the corporation; and also with having obtained, without consideration, on November 12, 1890, and before his appointment as receiver, $281.73, belonging to the corporation, and converting the same to his own use; and also with gross misconduct

in managing the receivership, whereby large sums of money were lost to the corporation. The facts alleged in the amended complaint are sufficient to constitute a cause of action against *James A. Smith* and in favor of the receiver *Boyd,* but not in favor of the creditors of the corporation. It therefore stands as an independent action in favor of the receiver and against *Smith.* His demurrer, however, like the other demurrers, is based upon another ground, which will now be considered.

5. Each of the several demurrers is in part upon the ground that it appears upon the face of the amended complaint that several causes of action have been improperly united. As indicated, the amended complaint fails to state facts sufficient to constitute a cause of action as against the defendants named in any one of the six demurrers first considered. It is well settled that they are not to be considered in determining whether several causes of action have been improperly united. *Bassett v. Warner,* 23 Wis. 673; *Truesdell v. Rhodes,* 26 Wis. 215; *Willard v. Reas,* 26 Wis. 540; *Lee v. Simpson,* 29 Wis. 333; *Schiffer v. Eau Claire,* 51 Wis. 385, 8 N. W. 253; *Hiles v. Johnson,* 67 Wis. 517, 30 N. W. 721. It is only where the complaint states two or more good causes of action that a demurrer will lie for misjoinder. Id. As indicated, the amended complaint states a good cause of action in favor of the creditors and against the defendants named in six of the demurrers, and also states a good cause of action in favor of the receiver *Boyd* and against the defendant *James A. Smith.* Is this independent cause of action in favor of *Boyd* properly joined with the causes of action in favor of the creditors? Under the repeated rulings of this court we must answer in the negative. *Barnes v. Beloit,* 19 Wis. 93; *Pier v. Fond du Lac Co.* 53 Wis. 432, 10 N. W. 686; *Shanahan v. Madison,* 57 Wis. 276, 283, 15 N. W. 154; *Linden Land Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493, 508, 509, 83 N. W. 851. It follows from what has

been said that demurrers numbered 1, 2, 7, 8, 9, 10, and 12 were each and all properly sustained, but only upon the ground that several causes of action are improperly united.

*By the Court.*—The appeal from the order of the circuit court refusing to state the grounds upon which such demurrers were sustained is dismissed. The several orders of the circuit court sustaining such demurrers are each and all affirmed, and the cause is remanded for further proceedings according to law.

On motion of respondent a rehearing was granted September 23, 1902, and the cause was reargued October 24, 1902.

*L. A. Doolittle,* for the appellants.

*C. F. Bundy,* for the respondents.

The following opinions were filed January 13, 1903:.

BARDEEN, J. A rehearing of this case was granted on the sole question of whether the statute of limitations had run in favor of the officers and directors of the defendant corporation. In the opinion, *ante,* p. 155 (90 N. W. 1087) this court held that such statute had not run, basing such holding upon the proposition that such officers and directors were trustees of an express trust. We are now urged to reconsider and recede from that position.

It abundantly appears from the complaint that more than six years had elapsed between the time of the commission of the acts for which such officers and directors are sought to be held liable and the date they were made parties to this action, so that, unless they are brought within some rule which prevents the running of the statute, they may invoke it, and thus resist the claims sought to be enforced against them. Strictly speaking, this action is not one in which the creditors are seeking to hold the officers of the corporation as trustees for themselves. It is rather an action in the right of the corporation itself, and brought by the creditors on its behalf

because the corporation cannot or will not sue. It was not intended, nor can it be fairly inferred from the former opinion that we held, that the officers of a going corporation were trustees of creditors. We do not intend to abate one jot or tittle from the rule now firmly established in this state on the so-called "trust-fund doctrine." The recent cases of *Slack v. Northwestern Nat. Bank,* 103 Wis. 57, 79 N. W. 51; *Killen v. Barnes,* 106 Wis. 546–572, 82 N. W. 536, and *Hamilton v. Menominee F. Q. Co.* 106 Wis. 352, 81 N. W. 876, sufficiently indicate the position of this court, and by that position we are still disposed to stand. This action, being one in the right of and on behalf of the corporation, is open to any defense which the defendants might have urged, had the corporation itself brought the suit. The acts alleged against the officers are of misfeasance and malfeasance. No doubt can reasonably be entertained but that the corporation might have brought an action at law at any time within six years after the commission thereof. As between the corporation and its officers, the latter were liable in a straight action at law any time during the six years next after their shortcoming. It is not perceived how the fact that creditors must bring their suit in equity, when the corporation cannot or will not act, changes the relations of the parties. The creditors possess no greater right than the corporation. They are bound by the legal status of the parties, and cannot maintain this action *unless* the relation between the corporation and its officers is held to be such as to render the six-year statute of limitations inapplicable.

We have now reached the very heart of the controversy between the parties. The general rule of law was correctly stated in the opinion that "the statute of limitations has no application in the case of an express trust, where there has been no denial or repudiation of the trust." If, therefore, the officers and directors of a corporation are indeed trustees of an express trust, as heretofore held, that ends the con-

troversy. We are convinced, however, that we stated the
rule too broadly in the former opinion. The rule quoted
from Thompson on Corporations is not fully supported by the
authorities. It is not easy to define with exactness the pre-
cise relation existing between a corporation and its stock-
holders, on the one side, and the officers and directors, on the
other. The latter are certainly not trustees of an express
trust, under the statute mentioned in the opinion. In *Lam-
berton v. Pereles,* 87 Wis. 449, 459, 58 N. W. 776, this court,
by the present Chief Justice, said:

"In this state we have no statute making the chapter on
uses and trusts, or any part of it, applicable to personal prop-
erty."

The officers of a corporation have no title to its real prop-
erty, so that they do not become express trustees under the
statute. Neither have they the legal title to either the per-
sonal property or the stock of the corporation. Their rela-
tion to the corporation is thus defined in 2 Pomeroy, Eq.
Jur. § 1089:

"The directors and supreme managing officers of corpora-
tions are constantly spoken of as trustees. They are not,
however, true trustees, with the corporation or the stockhold-
ers as their true *cestuis que trustent,* since they hold neither
the legal title to the corporate property, nor that to the stock.
In fact, directors are clothed at the same time in a double
character—that of *quasi* trustees and that of agents."

The English court, in *Ex parte Chippendale,* 4 De Gex,
M. & G. 19–52, speaking of this relation, says:

"Although directors undoubtedly stand in the position of
agents, and cannot bind their companies beyond the limits
of their authority, they also stand, in some degree, in the
position of trustees."

The supreme court of Pennsylvania, considering this same
question, said:

"It is by no means a well-settled point what is the precise
relation which directors sustain to stockholders. They are
undoubtedly said in many authorities to be trustees, but that,

as I apprehend, is only in a general sense, as we term an agent or any bailee intrusted with the care and management of the property of another. It is certain that they are not technical trustees. They can only be regarded as mandataries," etc. *Spering's App.* 71 Pa. St. 11.

The Tennessee court speaks of the matter thus:

"Directors are not express trustees. . . . They are mandataries. They are agents. They are trustees in the sense that every agent is a trustee for his principal, and bound to exercise diligence and good faith." *Wallace v. Lincoln S. Bank,* 89 Tenn. 630–649, 15 S. W. 448. See *Pearson v. Concord R. Corp.* 62 N. H. 537; *Bank of Mutual Redemption v. Hill,* 56 Me. 385; *Landis v. Saxton,* 105 Mo. 486, 490, 16 S. W. 912.

Expressions of this kind without number might be cited without getting any nearer exactitude of definition of this relation. No court that we are aware of has ever defined the relation as broadly as was stated in the former opinion by this court. We therefore withdraw the statement that such officers and directors are trustees of an express trust, as defined by sec. 2081, Stats. 1898.

We will now take up the question of whether their relation is such that, under the circumstances alleged in the complaint, they cannot avail themselves of the benefit of the statute of limitations. At this point we are met by a divergence in the authorities. One line of cases, of which *Williams v. McKay,* 40 N. J. Eq. 189, is a type, holds that the managers of a savings bank stand in the relation of trustees to depositors, so that the statute of limitations will not be a bar against a charge of mismanagement on their part which had occurred more than six years before the filing of the bill. See *Ellis v. Ward,* 137 Ill. 509, 25 N. E. 530; *Southern M. Ins. Co. v. Pike,* 32 La. Ann. 483; *Coxe v. Huntsville G. L. Co.* 106 Ala. 373, 17 South. 626; *Hightower v. Thornton,* 8 Ga. 486. The ruling in the New Jersey case seems to have been based expressly upon the holding that the relation between the di-

rectors and depositors (who were mere creditors) was similar to that of trustee and *cestui que trust,* and that the right of the depositor was a purely equitable one, which he could not enforce in a court of common law. 40 N. J. Eq. 198. It is perfectly evident that this court cannot follow this decision without overruling a large line of cases repudiating the trust-fund doctrine. Neither the corporation nor its governing body, so long as it is a going concern, holds its property in trust for creditors. The officers or directors occupy a fiduciary relation, demanding care, vigilance, and good faith. If they violate their duty, they at once become responsible to the corporation. If they are guilty of misfeasance or malfeasance, the latter may at once bring an action at law to enforce such liability. If the corporation refuses to act, the stockholders before insolvency, and the creditors after insolvency, may enforce such liability in the right of the corporation, and not otherwise. Such right is not based entirely upon the relation of trusteeship sustained to the creditors, but rather upon the legal right of the corporation to compel them to make reparation for their wrong. The right of the creditor to enforce the rights of the corporation may be said to rest upon the so-called fiduciary relation which the officers sustain to the corporation, and indirectly to them. The fact that the creditor must sue in equity does not alter the situation. The application of the statute of limitations in equity is determined by the cause of action stated, rather than by the nature of relief demanded. *Hughes v. Brown,* 88 Tenn. 578, 587, 13 S. W. 286. The cause of action stated in the complaint being one in the right of the corporation, and one which it might have enforced in an action at law, it becomes susceptible to such objections as the recalcitrant officers might have urged, had the corporation brought the suit.

The case of *Ellis v. Ward,* 137 Ill. 509, 25 N. E. 530, much relied upon, is bottomed upon two facts which this court cannot recognize as substantial. One is "that the assets of a

corporation are, in equity, a trust fund," and the other is that the relation between the officers and the corporation has "all the elements of an express trust." The case of *Southern M. Ins. Co. v. Pike,* 32 La. Ann. 483, was one where the directors intrusted the accounts and assets of the company to one who united in himself the offices of president and cashier, and who died without rendering an account of his trust. The court held that prescription did not run on a demand for a return of the property until the heir had done some act equivalent to a repudiation of the trust. We have no quarrel with the holding. *Coxe v. Huntsville G. L. Co.* 106 Ala. 373, 17 South. 626, simply holds that the right of a corporation to require an accounting from its president, who was also its general manager and controlled and managed all its affairs for many years, cannot be barred by the statute of limitations when it is shown that the failure to assert the right sooner was due to the refusal of said officer to allow an examination of his books, and to his deception and misrepresentation as to the condition of corporate affairs. The decision rests upon the fraud of the officer, and misrepresentation to the governing body. The case of *Hightower v. Thornton,* 8 Ga. 486, may be dismissed with the following quotation from the opinion:

"As to the statute of limitations, it need only be said that this is a case of a direct trust, purely technical, not cognizable at law, but falling within the proper, peculiar, and exclusive jurisdiction of a court of equity."

This review of the authorities cited in support of the appellants' position is sufficient to show the difficulty this court must experience in attempting to follow them. On the other hand, there is a clear line of authorities taking a contrary view. In the case of *Kane v. Bloodgood,* 7 Johns. Ch. 90, Chancellor KENT speaks on the subject as follows:

"The objection that the society held the money in question in the character of trustees, and that it was a trust which, upon equity principles, was not within the statute, has been

the main object of discussion in the cause; and there is
ground for a good deal of embarrassment in the examination
of the question, arising from the loose manner in which the
rule is often mentioned in the books, and the want of con-
sistency, as well as precision, in the series of cases applicable
to the point. I cannot assent to the proposition that all cases
of direct and express trust, and arising between trustee and
*cestui que trust,* are to be withdrawn from the operation of
the statute of limitations, notwithstanding a clear and cer-
tain remedy exists at law. The word trust is often used in
a very broad and comprehensive sense. Every deposit is a
direct trust. Every person who receives money to be paid to
another, or to be applied to a particular purpose to which he
does not apply it, is a trustee, and may be sued either at law
for money had and received, or in equity, as a trustee, for a
breach of trust. *Scott v. Surman,* Willes, 404. The recip-
rocal rights and duties founded upon the various species
of bailment, and growing out of those relations, . . .
are all cases of express and direct trust. . . . Are all
such cases to be taken out of the statute of limitations, under
the notion of a trust, when one of the parties selects his
remedy in this court? A review of the decisions will enable
us, as I apprehend, to deduce from them a safer and sounder
doctrine, and to establish upon the solid foundations of au-
thority and policy this rule:

"That the trusts intended by the courts of equity not to
be reached or affected by the statute of limitations are those
technical and continuing trusts which are not at all cognizable
at law, but fall within the proper, peculiar, and exclusive
jurisdiction of this court."

From his view of the authorities, it may be said that as
long as there is a continuing and subsisting trust, acknowl-
edged or acted upon by the parties, the statute does not apply,
but if the trustee denies the right of his *cestui que trust,* and
the holding becomes adverse, lapse of time from that period
may constitute a bar in equity, but other trusts which are the
ground of an action at law are not exempted from the opera-
tion of the statute. *Mason v. Henry,* 152 N. Y. 529, 46 N.
E. 837, was an action by the receiver of an insolvent insur-
ance company to compel a trustee (holding the same office as a

director under our statutes) to account for assets fraudulently misapplied by him. The court held that the receiver, as the representative of the corporation, might have sued the defendant, in an action at law, for the damages sustained from his misconduct, or in equity, as he did, to compel an accounting as to the property wasted and lost; that such action was barred by the lapse of six years between the misapplication and the commencement of the suit. *Pierson v. McCurdy,* 33 Hun, 520, affirmed in 100 N. Y. 608, 2 N. E. 615, holds pretty much the same doctrine. *Wallace v. Lincoln Savings Bank,* 89 Tenn. 630, 15 S. W. 448, was a suit against the officers and directors of a corporation for losses caused by their neglect and mismanagement of the corporate affairs. The following propositions were decided: That primarily such a suit was maintainable at law by the corporation alone, but creditors might maintain the action in equity when the corporation was disabled to sue or wrongfully refused to sue; that such suit, whether brought at law by the corporation itself, or in equity by a creditor, was alike subject to the bar of the statute of limitations; and that the six-year statute was the one that was applicable. So in a later case (*Cullen v. Coal Creek M. & M. Co.* [Tenn.] 42 S. W. 693) a demurrer to a bill against directors of a corporation for malfeasance in office was sustained after the lapse of six years, on the ground that such directors were not such direct or technical trustees as to take the case without the statute. See *Hughes v. Brown,* 88 Tenn. 578, 13 S. W. 286. The supreme court of Missouri followed substantially the same rule in an action brought against the secretary of a corporation for withholding money of the concern. *Landis v. Saxton,* 105 Mo. 486. In Indiana the rules above mentioned were applied in an action against public officers to recover moneys received by them under color of their offices; the court holding that, when money can be recovered in an ordinary action at law, the statute of limitations was a valid defense. *Newsom v.*

*Comm'rs,* 103 Ind. 526, 3 N. E. 163. In *Baxter v. Moses,*
77 Me. 465, 1 Atl. 350, it is said that the directors of a cor-
poration hold the corporate property under an implied or
constructive trust, and that one who is not actually a trustee,
but upon whom the character is forced by a court of equity,
may avail himself of the statute of limitations. See *Link v.
McLeod,* 194 Pa. St. 566, 45 Atl. 340. Upon mature de-
liberation, we are disposed to adopt the view of the latter
line of cases. It is plain that, however the relations of cor-
porate officers to their corporation and its stockholders may
be defined, such relations are not "technical and continuing
trusts," cognizable solely in a court of equity, which Chancel-
lor KENT declares are the only trusts not affected by the stat-
ute of limitations. The various causes of action stated in the
complaint for misapplication of funds were rights of action
in favor of the corporation, upon which actions at law could
have been commenced when the act was done. The plaintiffs
here are simply seeking to enforce the right of action of the
corporation. They have no greater right than it possessed.

Our statute (sec. 4206) is general and comprehensive, and
in itself makes no exception as against trustees of any kind;
and, while we are not inclined to deny or question the au-
thority of the precedents in this court importing into that
statute certain exceptions, we are unwilling to assume a prac-
tically legislative function, by adding other exceptions which
we might deem wise, which the legislature, in the exercise
of its constitutional discretion, has not seen fit to make.
Those precedents are cited in the former opinion. Several
of them go nearly to the extent of exempting express trusts
within the statute, but two of them suggest like exception in
certain other cases. *Howell v. Howell,* 15 Wis. 55, and *Faw-
cett v. Fawcett,* 85 Wis. 332, 55 N. W. 405. The first of
these is of but little significance, for in it was no attempt to
declare how far the exemption from statutes of limitation
does extend, but merely that it does not extend beyond "ex-

press or acknowledged trusts," and liability to account for proceeds of land wrongfully purchased with moneys of plaintiff was held barred by limitation. In *Fawcett v. Fawcett,* however, the limitation was extended to a resulting trust arising upon purchase of land in his own name by a husband with his wife's money; such resulting trust having been acknowledged by him, and having continued unrepudiated during their cohabitation to his death. The statute was held not to apply, because the trust was wholly beyond cognizance of courts of law, and had the characteristics of acknowledgment, continuance, and certainty. Chancellor KENT's classification of trusts in *Kane v. Bloodgood,* 7 Johns. Ch. 90, was adopted; among other parts, the declaration being that "other trusts which are the ground of action at law are not exempt." It seems plain, therefore, that nothing in the prior decisions of this court have established immunity from limitation statutes in favor of any trusts, other than "those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of this [chancery] court," as classified by Chancellor KENT. Obviously corporate officers are not trustees holding upon such a trust. It is not meant by this that they may not be, in a true sense, trustees of an express trust. While express trusts in real property can only be such as are defined and limited by sec. 2081, Stats. 1898, there may be many express trusts in personal property, as pointed out by Chancellor KENT in the case above cited, which are entirely independent of the trusts in real property referred to in sec. 2081. It may well be that corporate officers, so far as they handle and control the personal property of the corporation, may rightly be called trustees of an express trust, of which trust the corporation and its stockholders are the beneficiaries. 1 Perry, Trusts (5th Ed.) § 86. But so far as they may be sued at law, they do not come within the chancellor's classification, and hence the running of the statute of limitations is not in-

terrupted.   As already pointed out, their misapplication of
funds might at any time have been reached by an action at
law by the corporation.   The right to sue arose when the act
was done.   If the alleged conspiracy as to mismanagement
continued down to the death of the corporation, still, as we
understand it, the demurring defendants were not made par-
ties to this suit until more than six years thereafter.   An ac-
tion at law might have been instituted by the receiver im-
mediately after this appointment, as to all acts not then
barred by the statute.   *Mason v. Henry,* 152 N. Y. 529, 46
N. E. 837; *Wallace v. Lincoln Savings Bank,* 89 Tenn. 630,.
15 S. W. 448.

We are fully impressed with the weight of the reasons sup-
porting and opposing such exemption as is claimed in this.
action against directors and officers of corporations.   The
peril to the public in becoming either stockholders or credit-
ors, in view of the ample practical opportunity enjoyed by
such officers to cover their malfeasance from the knowledge
of any person other than themselves, and to control the action
of the corporation, whether by way of investigation or suit,
until the period of limitations shall have run, is a cogent con-
sideration.   On the other hand, in absence of limitation, such
officers, and their estates after them, may be held liable for
mere negligence at remote periods after their acts, when
witnesses may be dead and books and records lost, so that de-
fense against a *prima facie* case may be impossible, contrary
to the policy of the law in all analogous situations.   But after
all, these are considerations of policy, with which the legis-
lature can deal freely; and we feel induced to hold that as.
neither the statute nor the precedents of this court warrant
exception from the protection of the limitation statutes of
those who, though holding as fiduciaries and trustees, have at
all times been liable to remedy by suit at law for their mis-
conduct as such, we may not with propriety take from them
that protection which the statute, in terms, gives.   We hold,.

therefore, that the limitation has run, and the action, in the respects mentioned, is barred, upon the allegations of the complaint. The five demurrers mentioned in the former opinion, in subd. 2, are therefore sustained on the ground herein stated, and such opinion is hereby modified accordingly.

*By the Court.*—So ordered.

CASSODAY, C. J. (dissenting). It is well settled that so long as there is a continuing and subsisting trust, acknowledged or acted on by the parties, the statute of limitations are not available to a trustee. *Kane v. Bloodgood,* 7 Johns. Ch. 90, 123, 124. The reason for the rule is that the trustee being clothed with the legal title or possession of the property, and charged with the duty of caring for and preserving the same for the benefit of the *cestui que trust,* the latter has the right to assume that the trustee will perform such duty, unless he has knowledge that the trustee has denied his right, or claimed the possession of the property adversely to him. Id. Until such denial or adverse claim, the possession of the trustee is, in equity, deemed to be the possession of the *cestui que trust. Smith v. Combs,* 49 N. J. Eq. 420, 24 Atl. 9; *Lindsley v. Dodd,* 53 N. J. Eq. 69, 84, 30 Atl. 896. True, the officers and directors of a corporation are not regarded, in law, as having the title or possession of the property of the corporation, both of which are deemed to be vested in the corporation itself. Nevertheless they have the actual care and custody of such property, and are chargeable in equity with an active duty in respect to the same, not only for the benefit of the corporation, but also for the benefit of the *cestui que trust.* When, therefore, such officers and directors, in violation of such duty, convert a large portion of the property of the corporation to their own private use, and there is no publicity of the fraud, they necessarily become chargeable in equity, as trustees of the property so fraudu-

lently converted, for the benefit of the *cestui que trust*. As to the property so converted, they hold the same as a continuing and subsisting trust, assumed and acted upon by themselves in violation of the duty to the *cestui que trust*. The mere fact that an action might have been maintained in the name of the corporation which was managed and controlled by the wrongdoers, against such wrongdoers, to recover back the money or property so converted, immediately after the conversion took place, is no ground, in my judgment, for holding that the statute of limitations commenced running in favor of such wrongdoers and against the plaintiffs at the time of such conversion. Thus, it is held in New Jersey:

"The managers of a savings bank stand in the relationship of trustees to the depositors, so that the statute of limitations will not be a bar against a charge of mismanagement on their part which had occurred more than six years before the filing of the bill." *Williams v. McKay,* 40 N. J. Eq. 189.

Again: "The treasurer of a savings bank, who was at the same time one of its managers, was charged by the receiver of the bank with dereliction and malfeasance in office. Held, that his position as manager made him a trustee, and that consequently the statute of limitations was not a defense to the bill." *Williams v. Reilly,* 41 N. J. Eq. 137, 3 Atl. 692.

These cases were followed in *Somerset Co. Bank v. Veghte,* 42 N. J. Eq. 39, 42, 6 Atl. 278; *Williams v. McDonald,* 42 N. J. Eq. 392, 396, 7 Atl. 866. So in a case in Illinois it is said in the opinion of the court:

"Ordinarily an express trust is created by a deed or will; but there are many fiduciary relations established by law, and regulated by settled legal rules and principles, where all the elements of an express trust exist, and to which the same legal principles are applicable, and such appears to be the relation established by law between directors and the corporation." *Ellis v. Ward,* 137 Ill. 509, 520, 522, 25 N. E. 530. See, also, *Coxe v. Huntsville Gaslight Co.* 106 Ala. 373, 17 South. 626; *European & N. Am. Ry. Co. v. Poor,* 59 Me. 277, 278; *Butts v. Wood,* 38 Barb. 188; *Williams v. Page,* 24 Beav. 654.

In my judgment, there is less reason for holding that the statute of limitations runs in favor of such officers and directors in the case at bar than in a number of cases in this court wherein it has been held that the statute did not run by reason of such fiduciary or trust relation. *Sheldon v. Sheldon,* 3 Wis. 699; *Spear v. Evans,* 51 Wis. 42, 8 N. W. 20; *Bostwick v. Dickson,* 65 Wis. 593, 26 N. W. 549; *Second Nat. Bank v. Merrill,* 81 Wis. 151, 50 N. W. 505; *Williams v. Williams,* 82 Wis. 393, 52 N. W. 429; *Fawcett v. Fawcett,* 85 Wis. 332, 55 N. W. 405; *Taylor v. Hill,* 86 Wis. 106, 56 N. W. 738.

Such is a brief statement of a few of my reasons for dissenting from the decision on the motion for a rehearing in this case.

The following additional opinion was filed April 17, 1903:

PER CURIAM. One point suggested upon the rehearing is not mentioned in the foregoing opinion and deserves brief consideration. It is said that the defendant *John S. Owen,* a director of the corporation, who is charged with liability by the amended complaint, was a party to the action from the beginning, and hence that as to him the statute of limitations is not available as a defense. It is true that *Owen* was one of the plaintiffs in the action as originally brought in his capacity as an alleged creditor of the corporation; but the difficulty with the contention is that the action as originally brought was simply a plain action to wind up the corporation and distribute its assets, and did not include any cause of action against *Owen,* or any other officer, for maladministration, or to recover assets converted. No such cause of action was incorporated into the complaint until the reorganization of the action in May, 1900, when *Owen* and his co-plaintiff were made defendants, and the amended complaint was served. Therefore no action to enforce such liabilities

·can logically be held to have been commenced against *Owen* until such amended complaint was served.   It is well settled that, when an amendment to a pleading introduces a new ·cause of action, the statute of limitations runs until the making of the amendment.   1 Ency. Pl. & Pr. 622, and cases cited in note 1; *Gager v. Paul,* 111 Wis. 638, 87 N. W. 875. :See, also, *C. R. I. & P. R. Co. v. Young* (Neb.) 93 N. W. .922.